Vincent DeVito, Plaintiff-Appellant, v. The Village of Elburn, a Municipal Corporation, R. M. Baxter, L. E. Woodman, Otto L. Larsen, Harry L. Johnson, Harvey E. Hoyt, George Dobson, George Pobstman, Donald L. Peterson, Stanley Henderson and Michael Tierney, Defendants-Appellees.

Gen. No. 11,570.

Second District, First Division.

September 11, 1962.

George Brode, of Chicago, for appellant.

Joseph Radovich, Cooper & Donat and James C. Hallahan, of Geneva, for appellees.

SMITH, J.
■ What happens when there are inconsistencies between a complaint and the exhibit attached to it? Do we seesaw back and forth in an attempt at synthesis or can we pick one over the other? The answer is that we pick the exhibit. If the facts alleged in a complaint differ from the facts stated in an exhibit, the latter will control and the exhibit will be taken

as the factual basis upon which the complaint is based. Benner v. Huddelson Baptist Home, 24 Ill App2d 256, 164 NE2d 252; Price v. Solberg, 269 Ill 459, 109 NE 1024. We state this rule now to enhance understanding of that which follows.

Plaintiff's complaint has an exhibit attached to it. It is called Exhibit A "and made a part of this complaint." In the Complaint proper he alleges a conspiracy by defendants which cost him $100,000. They, in turn, have moved to dismiss the Complaint on the basis that this exhibit negatives the allegations leaving no cause of action. Their motion was allowed, plaintiff stands by his Complaint and brings this appeal.

The defendants are the Village of Elburn, Illinois, Trustees of the Village, and engineers retained by it to draw up plans, drawings and specifications for a sewage system. Plaintiff says that they in concert drew up such plans and specifications in a manner which concealed from him the true nature of certain subterranean conditions. These concealments, he says, were the means to the end of the Village obtaining a sewage system at bargain rates. By the same token, it was also the means to the end of lulling him into the mistaken belief that he could make a profit. Even then, he says, when it became apparent that such was an impossibility, the defendants, to gain their wrongful end, and again in concert, induced him to continue with the project by falsely telling him that he would be taken care of in the form of additional compensation. Exhibit A is the construction contract between plaintiff and the Village. It incorporates by reference the drawings and specifications. They thus "become a part of" Exhibit A, and since they are in the record, we can consider them.

Do inconsistencies in fact exist between Exhibit A and the Complaint. A simple exercise in juxtaposition should give us the answer.

61

## I
## Allegations of Complaint

Defendants conspired to draw up plans and specifications that did not truly reveal the nature and contours of the terrain, the nature of the subsoil, and the existence of prior underground improvements, thereby concealing subsurface faults, quicksands, and underground improvements, of which defendants had knowledge, and as to which plaintiff could not discover, thus deluding plaintiff as to the true conditions, difficulties and hazards, and thereby inducing him to enter into a contract at a price far below the just and true value of such construction.

By such act, plaintiff was lulled into the security that the specifications and plans contained the true and correct picture of the work required, and relying thereon he submitted his bid which was accepted.

That after commencing work plaintiff discovered the difficulties and hazards set forth above, reported same to defendants, and they, pursuant to their conspiracy told him to proceed and that he would be compensated therefor, which he was not, to his damage in the sum of $100,000.

## II
## Exhibit Recitals

Plaintiff has made careful examination of the site of the proposed work, the proposal, plans, specifications, and contract form before submitting a proposal.

Plaintiff shall be held to have examined the premises and site so as to compare them with the drawings and specifications and to have satisfied himself as to the condition of the premises, obstructions, the actual levels, and all excavating, filling in, etc., necessary to carry out the work before the delivery of his proposal, and no allowance shall be made subsequently in behalf of the contractor by reason of any error on his part.

Plaintiff has examined said plans and specifications and instructions to bidders and acknowledges that the same are accurate and complete and approves same.

No claim for an amount of money in excess of the contract price for work will be entertained or allowed on account of the character of the ground in which the trench or other excavation is made.

Plaintiff must assume the risk of meeting quicksand, hardpan, boulders, clay, rubbish, unforeseen obstacles, underground conduits, pavements, etc.

■ A comparison of these columns leaves us with the distinct impression that they pretty well neutralize each other. If so, the allegations fade away and their place is taken by the facts stated in Exhibit A. The complaint now reads something like this:

> Plaintiff, pursuant to a contract with the Village of Elburn, has constructed a sewage system for them. Prior to entering into such contract, defendants furnished him with Plans and Specifications of the project which did not show certain subterranean obstacles. Before submitting his bid, however, he made a careful examination of the site and compared the premises with the Drawings and Specifications, and satisfied himself as to the true conditions. He then approved the Plans and Specifications and acknowledged that they were accurate and complete. He agreed further to assume the risk of quicksands, unforeseen obstacles and underground conduits. He did not expect any allowance to be made to him, nor did he expect to make any claim in excess of the contract price by reason of any error he might make or because of the character of the ground in which the excavation was to be made. He completed the project, but in doing so, ran into unforeseen obstacles. Defendants told him to proceed and that he would be compensated therefor. He was not. His damages are $100,000 for which defendants are liable.

This statement is not a statement of any cause of action we are aware of. We say this categorically. There will have to be an extensive revision of the corpus juris, procedurally and substantively, for us to say otherwise.

There can be no doubt as to this as a matter of substance. In Marcus v. S. S. Kresge Co., 283 Ill App

556, the excavation contract provided that the price for the work was to be based on any and all existing soil conditions and formations. There, as here, the contractor encountered obstacles which upped his costs. He sued, contending that the obstacles encountered were not within the contemplation of the parties in setting a price, and that, as here, he was entitled to more. Recovery was denied. In City of East Peoria v. Colianni & Dire Co., 334 Ill App 108, 78 NE2d 806, the contractor charged a conspiracy to conceal subsurface conditions, and urged that the plans and specifications should have indicated underground obstructions. The instructions to bidders required the contractor to examine the location of the work and to determine for himself the nature of any unusual conditions effecting the cost. We quote:

> "[T]hat in any event it was the duty of the contractor, under the instructions to bidders, to examine the location of the work and to determine for itself the nature of any unusual conditions, including all subsurface or underground conditions. The master finds as a conclusion of fact and of law, there being no proof of fraud, that under the provisions of the contract the City assumed no responsibility for subsurface conditions and that such responsibility was entirely upon the contractor."

██ Nor can there be any doubt that as a matter of form the complaint, as rewritten, does not bespeak a cause of action. Certainly in pleading conduct of persons in wrongful combination sufficient to supercede a written contract at odds with the alleged wrongful means, something more than we have here should be forthcoming in the way of a recital of ultimate facts. This we do not have and for this reason we cannot find a cause of action. The facts, possibly

once present, are now gone. Simply to say that a conspiracy exists to obtain a bargain bid, and a continuation thereof by assurances of additional compensation is to plead nothing but conclusions. To state a cause of action plainly and concisely as called for in Section 34 of the Civil Practice Act, means that the plaintiff must do something more than recite his conclusions. Causes of action arise out of facts, and causes of action bottomed on wilful tort must spell out with particularity the facts giving rise to the claim. The Court below was right in dismissing the complaint and the order appealed from is affirmed.

Affirmed.

DOVE, P. J. and McNEAL, J., concur.