Sandy Kita, a Minor, by Mary Kita, His Mother and Next Friend, Plaintiff-Appellant, v. Young Men's Christian Association of Metropolitan Chicago, Defendant-Appellee.

Gen. No. 49,193.

First District, Fourth Division.

April 8, 1964.

Rehearing denied May 6, 1964.

Director & Liebenson, and Thomas Masuda, all of Chicago (Harold A. Liebenson and Thomas Masuda, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (John O'Meara and Richard E. Mueller, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

An action was brought by Sandy Kita, a minor, by Mary Kita, his mother and next friend, hereafter referred to as the plaintiff, against Young Men's Christian Association of Metropolitan Chicago, hereafter referred to as the defendant.

The plaintiff sought to recover damages from the defendant because of its alleged negligence in the operation of a day camp for children. The trial court sustained a motion to dismiss the second amended complaint and to dismiss the cause of action. From that order this appeal is taken.

It appears from the complaint that the plaintiff, aged nine, was a paid-up member of an eight-week summer day camp for minor male children, which was conducted at various places outside defendant's premises under supervision and direction of employees and agents of the defendant.

On July 20, 1959, the defendant, through its agents and servants, took the group to the Cook County Forest Preserve on Milwaukee Avenue near Devon Avenue, Chicago, Illinois. The plaintiff climbed a large tree from which he fell onto a picnic table, injuring himself thereby.

The second amended complaint had two counts; one sounding in tort and one sounding in contract. In this court the defendant contends that the complaint was properly dismissed in the trial court, since it does not allege facts "showing any breach of duty owed by the defendant to the plaintiff or that the defendant acted or failed to act in such a way as to impose liability upon it . . . ." The plaintiff's contention is that the second amended complaint properly states a cause of action.

In determining the contentions before us it will be necessary to consider and interpret certain sections of the Illinois Civil Practice Act. This Act was adopted and became the law of the State in 1933. Prior to that time there was a sharp division between equity and law practice. Law practice followed the common law rules of pleading and procedure except insofar as they were modified by the Practice Act then in existence. In spite of the provisions of that Practice Act a declaration which followed the form set out in Chitty would probably not be amenable to demurrer.

In Holdsworth, History of English Law, 3d Ed, vol II, 251, it is said:

> "One of the most difficult and one of the most permanent problems which a legal system must face is a combination of a due regard for the claims of substantial justice with a system of procedure rigid enough to be workable. It is easy to favour one quality at the expense of the other, with the result that either all system is lost, or there is so elaborate and technical a system that the decision of cases turns almost entirely upon the working of its rules and only occasionally and incidentally upon the merits of the cases themselves." *

---

* It might be interesting to refer to the case of Vider v. City of Chicago, 60 Ill App 595, 1895, a case for work done for the

411

In England, under the common law system, pleadings became rigidly formal and the pleading had to fit into the form of action intended to be alleged. In Slade v. Drake, Hob 295, 80 Eng Reprint 439, 1618, Chief Justice Hobart cited Littleton to the effect that "the pleading is the honourable, commendable, and profitable part of the law, . . . and therefore it is required that pleading be true; that is, the goodness and vertue of pleading; and that it be certain and single, and that is the beauty and grace of pleading."

In Pollock's "The Genius of the Common Law," c III, Surrebutter Castle, at p 27 (1912 Ed), it is said: "Perverse ingenuity, once let loose on the art of pleading, went for some centuries from bad to worse, notwithstanding occasional mitigations." It is further said: "We may now proceed to see what the bastard formalism of pleading had come to in England in the second quarter of the nineteenth century, . . ." Reference is made to Hayes' "Crogate's Case" which was a rather savage satire, supposed to be a dialogue in Hades on Special Pleading Reform between Baron Surrebutter (Baron Parke) and Crogate. The Baron is attempting to point out to Crogate the necessity and elegance of the decision in "Crogate's Case," 8 Co 66. Crogate asks the Baron if there are no courts where one can get justice without any special pleading. The Baron replies that there are certain courts which were instituted because of an "idle and absurd clamour on the part of the public," that those courts were

City, to be paid out of the proceeds of a special assessment to be levied by the City. No pleadings whatsoever were filed. Counsel stipulated that the case could be submitted to a jury and that the court could grant by its order of judgment such relief to the plaintiff and in such form as the facts would legally warrant without regard to the pleadings or the form of action. The court in its opinion said that there is no law compelling parties to prepare and file pleadings if they are content to have their case presented and heard without written statements.

inferior courts which were established to enable common people to sue for small debts and damages under twenty pounds. Crogate then asks why, if special pleading is a good thing, is it done without in these courts. The Baron responds that it is not brought into these courts because of the expense and delay which the forms of correct pleading would occasion, and because ". . . in these trifling matters the greatest object is to administer substantial justice in the simplest form and at the least expense." Crogate responds: "Well, in my ignorance, I should have thought that would have been the object in great cases as well as small."

The first movement for pleading reform began with Jeremy Bentham in England in 1776 and continued during the nineteenth century. It culminated in the English Supreme Court of Judicature Act of 1873. See 39 Harv L Rev 725. In the United States, due to the efforts of David Dudley Field, the so-called Field Code was adopted in New York in 1848. The Code united courts of law and equity and abolished forms of action. This was the genesis of code pleading in America.

Judge Charles E. Clark, formerly Dean of the Yale Law School, takes the view that you have a recurring round in pleading formality, that procedure becomes formal and rigid; reformers attack it, try to restore it to simplicity. They succeed to a certain extent, but immediately the new system is again reduced to the same formality and it is necessary to start all over again. It is generally held that pleading other than notice pleading must set out a legal right on the part of the plaintiff, a breach of a duty by the defendant, and resulting injury to the plaintiff, and in some jurisdictions, such as Illinois, a further allegation of due care on the part of the plaintiff in tort cases.

Under the common law system of pleading a single issue would be reached, which issue was then sub-

413

mitted to the trier of the fact for determination. In Clark on Code Pleading, it is stated that pleading is not an end in itself, but only a means to an end— the working out of justice through rules of substantive law. Quoting Collins, M. R., in In re Coles (1907), 1 KB 1, 4. The system of pleading at common law became ironbound and the pleadings in many instances became more important than the real issues involved in the case or the right of the litigant to have his claim decided by an impartial tribunal.

The purpose of the New York Code was to get away from the formality of common law pleading. It was thought that this could be done by requiring the pleader, instead of reciting the elaborate fictions which were frequently employed by pleaders under the common law system, to state facts constituting the cause of action, and the Code so provided. Immediately upon the adoption of the Code case after case came before the reviewing courts based upon pleadings alleged to be defective.

Many of the attacks on pleadings are made not for the purpose of clarifying the issues but for the purpose of delay. Roscoe Pound, in Some Principles of Procedural Reform, 4 Illinois Law Review 388, 391 (1910) says: "But there are civil causes throughout the country in which, to use the language of an English judge, the last hair in the tail of procrastination has been pulled out."

The New York Act provided that "Every pleading shall contain a plain and concise statement of the *material facts,* without unnecessary repetition, on which the party pleading relies, but not the evidence." The Act adopted in Illinois provided that "All pleadings shall contain a plain and concise statement of the pleader's cause of action, counterclaim, defense, or reply." Section 33, Civil Practice Act. Professor Edward W. Hinton stated that the omission of the term

414

"statement of facts" contained in the New York Act was done for a purpose. He says:

> "The Committee . . . decided to omit the word 'facts' in order to minimize so far as possible the controversy that has arisen in so many code states where pleadings have been constantly attacked as setting out conclusions rather than facts."

The foregoing is cited in Walter Wheeler Cook "Facts" and "Statements of Fact," 4 Univ Chi L Rev 233 (1936). However, there still remained the difficulty of defining what was meant by "cause of action."

In Illinois, in Chicago City Ry. Co. v. Jennings, 157 Ill 274, 41 NE 629 (1895), before the passage of the Civil Practice Act, it was held that an allegation of general negligence in the declaration, to the effect that the defendant, "by its said servants, so carelessly and improperly drove and managed the motor and train," was sufficient and stated a cause of action.

In Miller v. Kresge Co. (1922), 306 Ill 104, 137 NE 385, it was held that in actions growing out of personal injuries it is necessary to aver and prove three elements: First, the existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains; second, a failure of defendant to perform that duty; and third, an injury to the plaintiff resulting from such failure. That case further holds that a general averment of negligence in doing a particular act is good as against a general demurrer. The court then says at 306 Ill 107–108, 137 NE 387:

> "The declaration before us is, to say the least, carelessly and imperfectly drawn, and consists of general charges, in legal phraseology, of duty and negligence without directly averring specific facts.

415

. . . It is not altogether easy to draw with precision the line on one side of which will fall declarations which, because of the generality of their language, state no cause of action, and on the other side declarations which for the same reason defectively state a cause of action. The main purpose of a pleading in courts of law is accomplished when by reasonably intelligible allegations the opposing party is advised of the case to be made against him, and we think no one familiar with the use of the English language could fail to gather from the declaration filed that defendant was, as the proprietor of a retail store, accused of a breach of its duty of keeping the aisles of the store reasonably safe for the use of its customers."

The court held that the declaration stated a cause of action.

In Nichols Illinois Civil Practice, Vol 2, 1961 Revised Volume, § 767, it is said that the present trend in pleading is for simplicity. In Clark on Code Pleading (2nd Ed 1949), page 226, after pointing out that the early codifiers considered the distinction between fact, law and evidence to be more easily drawn than has proved to be the case, the author states:

". . . But at any rate, their ideal of pleading facts, as it has been worked out, has proved probably the most unsatisfactory part of their reform. This is due in part to the fact that the distinction, if existent at all, is not clear-cut and obvious, in part to the attempt to apply rigid rules to a matter where flexibility is a necessity, and in part to the inherent difficulties of the problem. For here we have the heart of all pleading difficulties. The pleader himself may not know his case before the evidence is produced; and, if he does, he will hardly desire to give it

away in advance. His opponent and, to a certain extent at least, the court will naturally wish to tie him down to a definite declaration before trial. Absolutely to reconcile these two opposing positions is impossible; all the court can do is to attempt a reasonable middle ground between them."

In Stenwall v. Bergstrom, 398 Ill 377, 75 NE2d 864, the trial court struck an amended complaint. With its order striking the complaint the court filed a memorandum stating that one paragraph of the complaint pleaded legal conclusions rather than facts. The court says (398 Ill 383, 75 NE2d 867):

"The pleadings have been disposed of on a motion to strike, the facts stated in the amended complaint will be taken as true. This rule does not, however, extend to conclusions drawn by the pleader. (Kurtzon v. Kurtzon, 395 Ill 73.) The complaint, in order to stand, must contain sufficient averments of facts to state a cause of action. We concede that many of the allegations in this complaint are mere conclusions of the pleader, but there are also many statements of fact included. Section 42 of the Civil Practice Act (Ill Rev Stats 1945, chap 110, par 166,) provides that no pleading shall be deemed bad in substance which shall contain such information as reasonably informs the opposite party of the nature of the claim or defense, and section 33 of the act provides that pleadings shall be liberally construed with a view to doing substantial justice between the parties. Crosby v. Weil, 382 Ill 538; Frasier v. Finlay, 375 Ill 78."

The court says that in determining whether a complaint states facts or conclusions the entire complaint must be considered and not its disconnected parts. The court reversed the trial court.

417

In Clark on Code Pleading (2d Ed 1947), pages 56–57, notice pleading is stated to be:

". . . in general a very brief statement, designed merely to give notice of the claim to the opponent. It has been used apparently with considerable success in the field of municipal courts and has been urged for general adoption.

. . . . . .

"It is perhaps doubtful if we are now prepared to go to the complete lengths of brevity urged by the proponents of notice pleading, except in isolated cases. But without so doing we may properly put the emphasis where they do. This, it seems, is in effect the modern tendency. The aim of pleadings should be therefore to give reasonable notice of the pleader's case to the opponent *and to the court.* This does not go as far as the technical notice pleading, since it requires notice of the pleader's entire cause, not merely that he has a claim. The notice to the court is perhaps the more important, for in general the opponent knows enough about the case to relieve us of worry about him. In fact we have spent altogether too much thought over the danger of surprising a defendant. If his case is prepared at all adequately he will not be surprised. Our solicitude for him will simply result in giving him opportunities to delay the case and harass his opponent. The main purpose of the pleadings should therefore be to give the trial court a proper understanding of the case. If the trial court is adequately informed of the issue by the pleadings, it means that the parties are likewise so informed. It is for the court, not the litigants, to vindicate pleading rules."

Notice pleading is now approved pleading in the federal courts.

418

We will now refer to Church v. Adler, 350 Ill App 471, 113 NE2d 327, which involved an appeal from an order dismissing plaintiff's suit following the sustaining of defendant's motion under section 45 of the Civil Practice Act to dismiss plaintiff's complaint. The only question considered by the court was the sufficiency of the plaintiff's pleading to state a cause of action under the Civil Practice Act. The court points out that the pleading is loosely drafted and in some respects defective in form and substance. In the complaint the plaintiff alleged that the defendant, a physician and surgeon, was employed by plaintiff to treat her and that he was guilty of one or more malfeasances and misfeasances. Plaintiff stated:

"(a) He so unskillfully and negligently conducted himself that by and through his want of skill and care the said sickness and malady of the plaintiff became greatly increased and aggravated and the plaintiff underwent great and unnecessary anguish and distress.

"(b) In that he, the said defendant, negligently failed and omitted to ascertain and diagnose plaintiff's condition."

Plaintiff further stated that the defendant negligently failed to perform an operation on the plaintiff in violation of his duty; that he negligently failed to treat the plaintiff after operating on her, and that he negligently failed and omitted to use the usual and customary skill which it was his duty to use. It was alleged that the plaintiff was not guilty of contributory negligence.

In its motion to dismiss, the defendant sets out numerous grounds, principally that the complaint consists of conclusions of the pleader rather than allegations of fact.

Mr. Justice Reynolds writes an opinion which goes to the very heart of the allegations now required in

this State. He considers the various sections of the Civil Practice Act, and says (350 Ill App 471, 478, 113 NE2d 330):

> "The Civil Practice Act does not authorize so-called notice pleading as plaintiff contends, nor does it require a strict pleading as is urged by defendant. A pleading must contain allegations of fact sufficient to state a cause of action. Burr v. State Bank of St. Charles, 344 Ill App 332; Stenwall v. Bergstrom, 398 Ill 377. Verbosity and looseness of form are to be discouraged and in some cases may render the pleading fatally defective. Whether a cause of action is stated is to be judged with the admonitions of liberal construction and reasonable information in mind and the whole complaint must be considered, not merely disconnected parts. Legal conclusions are to be disregarded. Stenwall v. Bergstrom, supra; Heuer v. Davis, 336 Ill App 224."

The Court then says that with these principles in mind it is of the opinion that sufficient facts are set forth to spell out a cause of action. The court further says (at 350 Ill App 479, 113 NE2d 331):

> "It sufficiently appears from the statements of fact in Count I, as distinguished from the allegations of legal conclusions, that plaintiff's claim is that she employed defendant, a physician and -surgeon, to treat her illness; that defendant undertook to treat her illness and accepted compensation for so doing; that he owed plaintiff a duty to exercise customary skill in treating her and to refrain from performing his duty negligently but that he performed his treatment in a negligent and unskillful manner, in one or more of the various particulars enumerated. If plaintiff succeeds in proving her allegations and that as a result

420

thereof, she suffered damages caused by defendant's negligence, she will be entitled to recover.

"Defendant vigorously urges that the words 'negligently and carelessly' are mere legal conclusions, not allegations of fact. No authority is cited. However, the words may be classified when standing alone and out of context (a question we need not now pass upon), they are not mere legal conclusions when properly employed in context with allegations stating circumstances which they characterize. Reell v. Central Ill. Electric & Gas Co., 317 Ill App 106; Beadles v. Servel Inc., 344 Ill App 133."

The court further says that no matter what the earlier law in the State may have been it has been settled since Chicago City Ry. Co. v. Jennings, 157 Ill 274, 41 NE 629, that an allegation of general negligence is sufficient. The court calls attention to the fact that in Wolfstein v. Illinois Power & Light Corp., 254 Ill App 362, at page 365, it is pointed out that in the holding in the Jennings case that an allegation of general negligence is sufficient the Supreme Court "was undoubtedly largely influenced in its judgment by the precedents established by long recognized authorities on common law pleading," and it was further said, "Thus in 2 Chitty on Pleading, 710, substantially the identical form as the count in this case, is set out as a proper precedent," and it cites a series of Illinois cases in which that form has been approved.

In Puterbaugh, Common Law Pleading and Practice (the authoritative book on pleading before the adoption of the C.P.A.), § 706 (1926 Ed), it is said: "It is sufficient if the facts stated are such as to raise a duty and show a failure to perform that duty and a resulting injury from which the law will attach to such failure of duty the charge of negligence." Professor Cleary, in The Complaint, U Ill LF 1 (1950),

discusses the impact of the notice provision of section 42. He states that while the requirement is that a complaint must state facts, nowhere in the Practice Act is the pleader told what facts should be stated. This omission was deliberate. On page 6 it is said:

". . . Of course, refraining from aggravating a problem does not amount to solving it. In any event, the Practice Act seems content with earlier concepts of facts for pleading purposes as evolved by the common law and by equity. Hence an answer must be sought in the cases, where we find the rule against the pleading of conclusions in lieu of facts."

But the cases reveal no consistent pattern, according to Cleary, and at page 13 he says:

"It must be concluded that the cases reveal a standard of measurement about as elastic as modern currency. In some situations great generality of expression has been allowed, and in others a high degree of specification has been exacted. While lack of definiteness plagues the practitioner confronted with the immediate problem of drafting a complaint, the very uncertainty preserves flexibility and may be an element of strength. In any event, we seem to be reasonably protected again [sic] formula-type pleadings except in the most stereotyped situations."

On page 17 Cleary further states:

"Sections 31 and 33 of the Practice Act seem definitely to require that a complaint state a cause of action. *Section 42(2), on the other hand, seems to contemplate something in the nature of notice pleading, with a complaint possibly being sufficient although it falls short of stating a cause*

*of action.* In Wuellmer v. Illinois Bell Telephone Company the court held that nothing in the Practice Act did away with the requirement that a complaint state a cause of action, though the sections mentioned above were not discussed. Section 42 seems to be regarded merely as an amplification, uncertain in extent, of the exhortation contained in Section 33 that pleadings be construed liberally, which in itself is also uncertain.

"If, then, a complaint must state a cause of action, some inquiry may properly be directed to the question, what is a cause of action? Much has been written about this slippery concept, yet little will be found in the literature which will comfort the practitioner confronted with the problem of stating a cause of action. As Professor Hinton remarked, 'no pleading ever did, and probably no pleading ever will, really state a cause of action.' *Really to state a cause of action would require an exhaustion of all possible factors which might have a bearing on the plaintiff's right to recover. . . ."* (Emphasis added.)

See Burrell, The Use of Motions as a Method of Discovering Facts and Narrowing Issues, U Ill LF 45 (1950). See also Millar, Pleading Under the Illinois Civil Practice Act, 28 Ill Law Rev 460 (1934).

In the instant case the plaintiff filed an amended complaint in two counts; the first count was in tort, the second in contract. In the first count, in alleging the defendant's breach of his duty to the plaintiff, the pleader says:

"3. At said time and place defendant, through its agents and servants acting in its behalf, was guilty of one or more of the following wrongful and negligent acts:

(a) Carelessly and negligently failed to provide adequate supervision to the campers in said day camp.

(b) Carelessly and negligently failed to keep a proper lookout over the campers in said group at the aforesaid outing.

(c) Carelessly and negligently failed to provide the campers with a safe place for said outing.

(d) Carelessly and negligently supervised said campers at said outing.

(e) Carelessly and negligently failed to provide the day campers with a sufficient number of supervisors and counselors.

(f) Carelessly and negligently permitted plaintiff to climb a large dangerous tree at said day camp site.

"4. As a direct and proximate result of one or more of the above set forth wrongful acts of the defendant, through its agents and servants acting in its behalf, separate and apart from the day camp activities, the plaintiff was permitted to climb a large tree at said outing and fell from said tree onto a picnic table, directly injuring himself thereby. . . ."

In the second count it is alleged that the defendant breached its contract by failing to provide adequate and sufficient supervisory personnel and a safe place for the said day camp in that the plaintiff "was permitted to climb a large tree at said outing, which was dangerous, and fell from said tree onto a picnic table, directly injuring himself thereby."

In this court the defendant admits that it owed a duty of reasonable care to the minor plaintiff and that the complaint stated the duty. It contends that the amended complaint was properly dismissed because

the facts therein alleged were not sufficient to show a breach of duty.

▮ It is our opinion that the complaint, by reasonably intelligent allegations, is sufficient to advise the opposing party of the case which the plaintiff will attempt to prove against it. Under the rules laid down in the cases heretofore cited in this opinion, the complaint states a cause of action, judging the complaint as a whole, and "with the admonitions of liberal construction and reasonable information in mind," (Church v. Adler, supra) and bearing in mind section 42 of the Civil Practice Act which states that "no pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he is called upon to meet." The intent of the Civil Practice Act was to get away from the formality and rigidity of the common law pleading. In Crosby v. Weil, 382 Ill 538, 548, 48 NE2d 386, 391, the court states that "It is only necessary that the allegations state a cause of action." The court quotes section 42 of the Civil Practice Act and says further:

> ". . . Under the Civil Practice Act, pleadings are to be liberally construed with the view toward doing substantial justice between the parties and no pleading is to be deemed bad in substance which shall contain such information as shall reasonably inform the opposite party of the nature of the claim. (Frasier v. Finlay, 375 Ill 78.) With the adoption of the Civil Practice Act there has been a definite attempt to abolish the so-called technicalities of common-law pleading. It is our opinion that the complaint in the case at bar states a cause of action. If appellees desire the same made more definite and certain in any particular, the Civil Practice Act provides them with such a remedy."

See also Burr v. State Bank of St. Charles, 344 Ill App 332, 100 NE2d 773. If the courts, by their restrictive interpretation of that Act, again place the rights of the plaintiff and defendant in a legal strait jacket, they are pursuing the path pointed out by Judge Clark. The purpose of the law is to do substantial justice and the courts must exercise restraint in construing a statute which seeks to reach that end.

■ In this court the defendant has moved to dismiss the appeal on the ground that the order of the trial court, which is as follows:

> "It is further ordered that the Motion to Dismiss the Second Complaint at Law is sustained and the above-entitled cause is hereby dismissed."

is not sufficient to constitute a final order, and cites cases in which the Illinois courts have held that to have a final order there must be a statement that the plaintiff take nothing or that the defendant go hence without day. However, among the cases cited is Harris v. Aetna Ins. Co., Inc., 19 Ill App2d 577, 154 NE 2d 801, which merely holds that where the order only strikes the statement of claim but does not dismiss the action, it is not final. In Chicago Portrait Co. v. Chicago Crayon Co., 217 Ill 200, 75 NE 473, the court holds that the judgment was not final, since all that was done in the trial court was to sustain a demurrer to the declaration, and the trial court "neither adjudged that the plaintiff take nothing by the writ or that the defendant go hence without day, and the judgment contained no words of equivalent meaning."

In the instant case the cause was dismissed. It is our opinion that that recital in the judgment is sufficient to make the judgment final. The motion to dismiss the appeal is denied. The order entered in the Circuit Court of Cook County is reversed and the cause is remanded with directions that the defendant

be ordered within a fixed time to plead to the complaint and the court shall take such other and further proceedings as are not inconsistent with this opinion.

Reversed and remanded with directions.

ENGLISH, P. J. and DRUCKER, J., concur.