**Eva Peach, Conservator of Leo Peach, Incompetent, Plaintiff-Appellant, v. Lester Peach, Gonigam-Bass-Hill, Inc., a Corporation, and International Harvester Company, a Corporation, Defendants-Appellees.**

Gen. No. 65–112.

Second District.

July 6, 1966.

Roger V. Pierson, of Princeton, for appellant.

George F. Nichols and William R. Gunner, of Dixon, and Gerald W. Fearer, of Oregon, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

Eva Peach, as conservator of Leo Peach, her son, filed suit against Lester Peach, another son, Gonigam-Bass-Hill, Inc., and International Harvester Company, defendants, to recover for certain injuries sustained by Leo Peach. The injuries occurred when a falling bale of hay struck Leo Peach on the head while he was working near a grain elevator which was being used on the Lester Peach farm. The other two defendants were the manufacturer and seller of the elevator in question.

The injury occurred on July 8, 1960, and this suit was not commenced until November 27, 1962—more than two years after the date of the injury. The plaintiff was not appointed conservator for Leo Peach until October 23, 1962.

The defendants filed motions to dismiss the amended complaint because "at no time during the period from July 8, 1960 to July 8, 1962, was Leo Peach within the

age of 21 years or insane or mentally ill or imprisoned on a criminal charge so as to toll the statute of limitations in accordance with the provisions of Chapter 83, Illinois Revised Statutes, section 22." In its order overruling these motions, the trial court stated:

> "In the original complaint and in the amended complaint the plaintiff alleges that 'Leo Peach, on July 8, 1960, and for many months prior thereto, was by reason of mental deficiency an incompetent person' and that on July 8, 1960, the plaintiff was injured by detailed negligent acts of the defendants. . . .
>
> "The plaintiff has assumed the burden of proof in this case—that the plaintiff was incompetent on the day of the accident and that, of course, he must prove, together with the other allegations in the complaint before he can hope to effect a recovery. He has, however, stated a cause of action and all motions to dismiss are overruled."

The trial court ordered that the issue of the mental illness of Leo Peach be severed and tried separately. This single issue was tried before a jury which found for the plaintiff by affirmatively answering the special interrogatory—"Was Leo Peach from the period of time beginning July 8, 1960 up to and including July 9, 1962, an incompetent person?" The trial court set aside the finding of the jury on the special interrogatory as being "against the manifest weight of the evidence," and then granted defendants' motions to dismiss the complaint. The order of dismissal read in part:

> "As hereinbefore noted the Court overruled the defendants' motions to dismiss the complaint on the theory that if the plaintiff was incompetent between the dates of July 8, 1960 and July 9, 1962,

and could prove it, it would toll the Statute of Limitations.

## ORDER

"In the opinion of the Court the plaintiff has failed to make such proof and the Court so finds. The verdict is set aside and the Court overrules itself with reference to the former motions to dismiss. It now grants the motions to dismiss."

Plaintiff filed neither a motion for new trial of the issue of the incompetency of Leo Peach, nor a motion to vacate the aforesaid order dismissing the complaint, but rather, filed notice of appeal from the order of dismissal on the ground that the special finding of the jury was not against the manifest weight of the evidence.

At the outset we must turn to the defendants' contention that the order of dismissal was not a final order, and, hence, this appeal will not lie. In this regard, defendants argue that no judgment was entered for defendants containing the formal pronouncements traditional to final judgments, such as, "the plaintiff take nothing by virtue of this action and that the defendants go hence without day." They also urge that the trial court made no attempt to assess costs or to permit execution to issue for costs.

The new Judicial Article provides an appeal as of right from final judgments of the Circuit Court to the Appellate Court in all cases other than those appealable directly to the Supreme Court, except that after a trial on the merits in a criminal case, no appeal shall lie from a judgment of acquittal. It also provides that appeals to the Appellate Court from other than final judgments of the Circuit Court may be provided for by rule of the Supreme Court. (Constitution of Illinois 1870, art 6, § 7.) Article 6 became effective January 1, 1964, and sections

77 and 78 of the Civil Practice Act were repealed as of that date, and Supreme Court Rules 30 and 31 then became effective (Ill Rev Stats 1963, c 110, pars 77, 78, 101.30 and 101.31).

We acknowledge that the order under consideration in the case at bar is appealable only if it is final. We also concede that there are cases which appear to exalt form over substance with reference to the language in which the order or judgment is couched, in determining its finality. In Johnson v. City of Rockford, 26 Ill App2d 133, 169 NE2d 534 (2nd Dist 1960), at page 137, the court stated:

> "An order providing that certain parts of a complaint be dismissed but not adjudging that plaintiff take nothing nor that defendant go hence without day and containing no words or phrases of equal import, does not dispose of the rights of the parties respecting such dismissed portions and is not a final order from which an appeal will lie. (Citations.) Where the order merely sustains defendant's motion to strike complaint without stating more, such order is not a final appealable order, and appeal therefrom must be dismissed, even though the question of jurisdiction is not raised by the parties."

However, it has long been the law that "no particular form was required in the proceedings of an inferior court to render their order a judgment. It is sufficient if it be final, and the party may be injured." Johnson v. Gillett, 52 Ill 358, 360 (1869).

More recently, the Supreme Court in The Village of Niles v. Szczesny, 13 Ill2d 45, 147 NE2d 371 (1958), at page 48, defined a final judgment as follows:

> "To be final and appealable, a judgment or order must terminate the litigation between the parties on the merits of the cause, so that, if affirmed,

77

the trial court has only to proceed with the execution of the judgment. (Citations.) While the order need not dispose of all the issues presented by the pleadings, it must be final in the sense that it disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof."

In Kita v. Young Men's Christian Ass'n of Metropolitan Chicago, 47 Ill App2d 409, 198 NE2d 174 (1st Dist 1964), the appellee moved to dismiss the appeal because the order of the trial court was not a final order. The order, which was set forth at page 426, read:

"It is further ordered that the Motion to Dismiss the Second Complaint at Law is sustained and the above-entitled cause is hereby dismissed."

The court noted that the order lacked the words, "that the plaintiff take nothing or that the defendant go hence without day," but held that the recital in the order was sufficient to make the judgment final. And, in Green v. Union El. R. Co., 118 Ill App 1, 5 (1st Dist 1905), an order absolutely dismissing a cause without assessing costs, was held to be a final order.

██ ██ We hold that the only attribute indispensable to the finality of a judgment or order is that it terminate the litigation between the parties to the suit and finally determine, fix and dispose of their rights as to the issues made by the suit. The test of finality lies in the substance and not the form of the judgment or order. The Village of Niles v. Szczesny, supra; Johnson v. Gillett, supra; and 6 Nichols Ill Civ Prac, §§ 5925, 5917, 5907 and 5901. To the extent that Johnson v. City of Rockford, supra, holds to the contrary, it is hereby overruled.

In the case at bar, the incompetency of Leo Peach was essential to plaintiff's claim that the statute of limitations was tolled. After a trial on this issue, the lower

court found that the evidence was not sufficient to sustain plaintiff's burden in this respect. Absent the incompetency of Leo Peach, the plaintiff's action was barred by the statute of limitations. The order of the trial court dismissing the cause for the failure to sustain this burden terminated the litigation between the parties and disposed of the case, even though it was not couched in the particular phraseology or form once traditionally used under common-law procedures.

■ It appears that the defendants did not obtain a judgment for costs because they did not bring the matter to the court's attention. We concede that if they had done so, they would have been entitled to a judgment for costs; and if the court had refused to enter such a judgment, it would have been error. The defendants do not urge here, however, that the trial court committed error in its order, but only that the order was not final, absent the cost provisions. The presence or absence of cost provisions in an order or judgment may be error, but such circumstance alone cannot be the basis of determining the finality of a judgment, order or decree. 6 Nichols, supra, § 5917.

■ In the case at bar, the jury made a special finding on the question of the incompetency of Leo Peach. Under section 65 of the Civil Practice Act (Ill Rev Stats 1965, c 110, par 65), general verdicts are mandatory except where the nature of a case requires a special verdict. (See: Joint Committee Comments—Smith-Hurd Ill Anno Stats ch 110, par 65.) The special interrogatory is a modified form of the special verdict (McCaskill, Illinois Civil Practice Act Annotated, pp 158–161 and 1936 Supplement, pp 179 and 180) and is a convenient tool often used in connection with the trial of separate issues—as in the case before us.

■■ The law is well settled that a trial court may set aside a special interrogatory inconsistent with the general verdict when such interrogatory is against the

79

manifest weight of the evidence. Freeman v. Chicago Transit Authority, 50 Ill App2d 125, 136, 200 NE2d 128 (1st Dist 1964) ; Young v. Illinois Cent. R. Co., 319 Ill App 311, 322, 49 NE2d 268 (3rd Dist 1943) ; Paul v. Garman, 310 Ill App 447, 457, 34 NE2d 884 (2nd Dist 1941), and may also set aside a special interrogatory on a single issue where such interrogatory is against the manifest weight of the evidence. Freeman v. Chicago Transit Authority, supra, 138–140; Paul v. Garman, supra, 457. This places before us the question of whether the special finding of the jury on the issue of Leo Peach's incompetency was against the manifest weight of the evidence. This requires our consideration of the pertinent evidence.

The plaintiff testified that Leo was born on January 23, 1929, and did not walk until he was 22 months old; that he stayed in school until he was 16 years old, but could not read and there had been no change in his development since the time he left school; and that he merely looks at newspapers and has no interests, hobbies or activities. She stated that he had a checking account until 1944 and signed checks; that he played pinochle at public card parties; that he was a registered voter and last voted in 1964; and that he has a driver's license and drives a car. She further stated that he lived with her, but when he worked on his brother's farm he would spend only the weekends with her and would stay the remainder of the week at the farm; and that he had no other employment. Plaintiff also testified that in her opinion he was "mentally deficient." However, when plaintiff filed a petition to probate her husband's will in 1951, she did not list her son as being incompetent, but rather, described him as an adult.

Others testified that Leo Peach was slow in his mental processes and his speech impeded. A doctor testified that Leo followed orders well. Two teachers, who had taught in the one-room schoolhouse attended by Leo,

testified that he was not a good student, could not read well, was slow, but his conduct was good; that his comprehension was low and his concentration span was short; and that he reached his peak of learning at about the fifth grade level.

A doctor, specializing in neurology and psychiatry, testified that Leo had limited intellectual resources, but was alert and cooperative. He examined Leo on May 1, 1964, and was of the opinion that Leo was "mentally retarded."

The statute of limitations provides that if a person entitled to bring the action is ". . . insane, or mentally ill . . . , he or she may bring the action within two years after the disability is removed." (Ill Rev Stats 1963, c 83, par 22.) None of the parties hereto has directed our attention to a comprehensive interpretation of the words "insane or mentally ill" as used in this particular statute. The Historical and Practice Note contained in Smith-Hurd Ill Anno Stats c 83, par 22, states that the section was amended in 1951 by adding the clause "or mentally ill" following the clause "or insane" to conform to the terminology of the Mental Health Code.

The Mental Health Code of 1951 defined a "mentally ill" person as:

> "Any person afflicted with mental disease to such an extent that for his own welfare, or the welfare of others or of the community, he requires care, treatment, detention and training, and which renders him incapable of caring for and managing his own estate;" (Ill Rev Stats 1951, c 91½, par 1–8.)

The Code was later amended and sections 1–7, 1–8 and 1–9 provide:

> "1–7. 'Mentally Deficient Person,' when used in this Act, means any person whose mental abilities have

been arrested from birth, or whose mental development has been arrested by disease or physical injury occurring at an early age, who requires care, treatment, detention and training in a hospital or under a guardian or conservator for his own welfare, or the welfare of others or of the community; provided that no mentally ill person shall be regarded as mentally deficient unless he is mentally deficient as herein defined." (Ill Rev Stats 1963, c 91½, par 1–7.)

"1–8. 'Mentally Ill Person,' when used in this Act, means any person afflicted with mental disease to such an extent that for his own welfare, or the welfare of others or of the community, he requires care, treatment, detention and training, and which renders him incapable of caring for and managing his own estate; . . . ." (Ill Rev Stats 1963, c 91½, par 1–8.)

"1–9. 'Person in Need of Mental Treatment,' when used in this Act, means any person afflicted with mental disease to such an extent that for his own welfare, or the welfare of others or of the community, he requires care, treatment, detention and training, without reference to his ability to care for and manage his own estate." (Ill Rev Stats 1963, c 91½, par 1–9.)

■ The legislature has limited the exception in the statute of limitations to those who are "insane or mentally ill" as those words are variously defined. It has not seen fit to extend the exceptions to a class of persons who, though not insane or mentally ill, do not possess the mental capabilities expected of or common to persons of their age. No such exception may be implied or created by the courts. Morgan v. The People, 16 Ill2d 374, 379, 158 NE2d 24 (1959).

In 54 CJS, Limitations of Actions, § 242, p 269, in discussing the savings clauses contained in various statutes of limitations, it is stated:

> "The party must show the condition of mind contemplated by the statute, which will not be extended to embrace other conditions."

Other jurisdictions in interpreting the meaning of words such as "insanity" or "mental illness" as used in statutes of limitations, have held that the language contemplates a condition such that the sufferer was incapable of caring for his property or transacting business, or understanding the nature of his acts or his rights, or that which transpired. Gottesman v. Simon, 169 Cal App2d 494, 337 P2d 906, 909 (1959); Barnett v. Ashley, 89 Ga App 679, 81 SE2d 11, 13; Piper v. Hoard, 107 NY 67, 13 NE 632, 634 (1887). These various definitions are not unalike.

We believe that the words "insane" or "mentally ill" as used in the Illinois Statute of Limitations contemplate that the sufferer could not comprehend the nature of the act giving rise to his cause of action or his rights, and that his condition is such as to require care in a hospital or under a guardian or conservator for his own welfare or the welfare of others. It would appear that such a condition would of necessity also render the sufferer incapable of caring for his own estate. Tested by these standards, we cannot say that the trial court erred in setting aside the special finding.

Leo Peach was able to read, play pinochle, pass a driver's license examination, drive a car, work on a farm, maintain a checking account at a local bank, and write checks. He was able to qualify as a registered voter, and last voted in November, 1964. His doctor testified that he followed directions well and would return as directed for treatment of his injuries. In sum, while he

was undoubtedly retarded and of limited intelligence and comprehension capacity, and his concentration span was short, yet apparently, he was alert and cooperative and had judgment, memory, sense and understanding.

Under the facts of this case, the trial court could well conclude that there was not sufficient evidence to sustain a finding that Leo Peach could not comprehend that which transpired or the nature of his acts or rights, or that he was incapable of managing his estate, or that he needed care for the protection of his own welfare or the welfare of others.

Where the special finding is against the manifest weight of the evidence, the court not only has the power—but the duty—to set it aside. Freeman v. Chicago Transit Authority, supra, 137. We believe that the trial court properly set aside the special finding of the jury that Leo Peach was incompetent, as against the manifest weight of the evidence. Absent such finding, the plaintiff's cause of action was barred by the statute of limitations, and the trial court properly ordered its dismissal. Consequently, the judgment of the trial court is affirmed.

Judgment affirmed.

MORAN, P. J. and ABRAHAMSON, J., concur.