ST. JOSEPH DATA SERVICE, INC., Plaintiff-Appellant, *v.* THOMAS JEFFERSON LIFE INSURANCE COMPANY OF AMERICA, Defendant-Appellee.

Fourth District   No. 15243

Opinion filed July 18, 1979.—Rehearing denied August 14, 1979.

Richard T. West, of Follmer, West, Erdmann and Clem, of Champaign, for appellant.

Lawrence E. Johnson and Associates, of Champaign, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

What is a final order for purposes of appealability?

The primal problem which we must untangle is whether or not we have jurisdiction to entertain this appeal on the rather mundane procedural issues posited.

Let us see.

St. Joseph Data Service, Inc., filed an action against Thomas Jefferson Life Insurance Company of America in three separate counts.

Counts I and II sought relief for breach of express contract and count III was based on a theory of estoppel. After the court granted defendant's motion to dismiss counts I and III of the complaint, St. Joseph filed an amended complaint. Again the court granted Jefferson's motion to dismiss as to counts I and III. St. Joseph then filed a second amended complaint, containing an additional count. Following arguments of counsel, the court dismissed counts I, III, and IV, and—via docket entry—said:

> "Now on this day, ruling on cause heretofore taken under advisement. Motion to dismiss allowed on the grounds that there is no ambiguity in the contract appended as Exhibit "A" to the Second Amended Complaint and that the written instrument is controlling. Counts I, III and IV of Second Amended Complaint dismissed. No just cause for delay of enforcement or appeal as to such dismissal. No written order required."

St. Joseph has appealed from that order dismissing the three counts.

■■ The threshold question which must be dealt with is whether this court has jurisdiction to consider this appeal under Supreme Court Rule 304. (Ill. Rev. Stat. 1977, ch. 110A, par. 304.) Supreme Court Rule 304(a) provides that an appeal may be taken from a final judgment as to one or more but fewer than all the parties or claims if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. The rule, however, does not dispense with the necessity of a final order. (*Peterson v. Tazewell County* (1975), 29 Ill. App. 3d 915, 330 N.E.2d 888.) As the committee comments to the rule note: "It is not the court's finding that makes the judgment final, but it is the court's finding that makes this kind of final judgment appealable."

The Illinois Supreme Court, in *Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 48, 147 N.E.2d 371, 372, defined a final and appealable order this way:

> "To be final and appealable, a judgment or order must terminate the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with the execution of the judgment. [Citations.] While the order need not dispose of all the issues presented by the pleadings, it must be final in the sense that it disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof. [Citations.]"

While there is no general provision in the Civil Practice Act which requires that orders of dismissal specifically include certain "magic" words to indicate finality, previously orders dismissing complaints which did not include the words "plaintiff take nothing," "defendant go hence without day," or phrases of equal import, were not final orders. *Johnson v. City of Rockford* (1960), 26 Ill. App. 2d 133, 169 N.E.2d 534, *overruled,*

*Peach v. Peach* (1966), 73 Ill. App. 2d 72, 218 N.E.2d 504; *Thompson v. Contreras* (1950), 340 Ill. App. 527, 92 N.E.2d 340; *Aetna Plywood & Veneer Co. v. Robineau* (1949), 336 Ill. App. 339, 83 N.E.2d 896; *Prange v. City of Marion* (1938), 297 Ill. App. 353, 17 N.E.2d 616; *contra, Peach v. Peach* (1966), 73 Ill. App. 2d 72, 218 N.E.2d 504.

More recently courts have held that substance—not form—determines whether the order is final. In *Bates v. Ulrich* (1976), 38 Ill. App. 3d 203, 347 N.E.2d 286, this court considered the following order: "It is Ordered that this cause be dismissed at the cost of the Plaintiff." The trial court had earlier dismissed the original and first amended complaints for failure to state a cause of action, but had granted leave to amend. In holding the order to be final and appealable, this court stated:

> "A general dismissal with no right given to plead over, and followed by no request for leave to plead over is a final, appealable order. [Citation.] Substance, not form, determines whether the order is final. [Citation.] The phrase that defendant 'go hence without day' are not words of art essential to finality. [Citation.] Neither does finality depend upon whether the 'suit,' 'cause of action' or 'complaint' is dismissed. [Citation.] The record here demonstrates that the trial judge intended the order in question to be final. On the first two occasions his order specifically dismissed the complaint and granted leave to amend. The order in question dismissed the 'cause' *not* the complaint, and assessed costs against the plaintiff. Had the order been other than final, the trial judge would have had no authority to assess the costs." (38 Ill. App. 3d 203, 204, 347 N.E.2d 286, 288.)

By like token, *Kita v. YMCA* (1964), 47 Ill. App. 2d 409, 198 N.E.2d 174, held that the language of the following order was sufficient to make the judgment final: " 'It is further ordered that the Motion to Dismiss the Second Complaint at Law is sustained and the above-entitled cause is hereby dismissed.' " 47 Ill. App. 2d 409, 426, 198 N.E.2d 174, 183.

And again in *Martin v. Masini* (1967), 90 Ill. App. 2d 348, 232 N.E.2d 770, the court found that finality depends on the basis and substance of the dismissal and the effect of the adjudication. Since the dismissal in that case was not based upon any technical defects or matters which could have been cured by an amended pleading, it was a final order. This principle was reiterated in *Lakatos v. Prudence Mutual Casualty Co.* (1969), 113 Ill. App. 2d 310, 252 N.E.2d 123.

Effective January 1, 1967, the Illinois Supreme Court enacted Rule 273 (43 Ill. 2d R.273) which directs that:

> "Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure

to join an indispensable party, operates as an adjudication upon the merits."

In the absence of contrary language, the rule renders all involuntary dismissals not within its exceptions final. Thus, clarity and uniformity are brought to an area fraught with the opposite.

Rule 273 is based upon Federal Rule 41(b) (Fed. R. Civ. P. 41(b)) which provides, in part:

"Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits." (See Committee Comments, Ill. Ann. Stat., ch. 110A, par. 273, at 281 (Smith-Hurd 1973).)

The burden which the Federal rule created was discussed in *Rinehart v. Locke* (7th Cir. 1971), 454 F.2d 313:

"[W]e are persuaded that under the Rule an order of a district court which dismisses a complaint for failure to state a claim, but which does not specify that the dismissal is without prejudice, is res judicata as to the then existing claim which it appears plaintiff was attempting to state. This view places upon a plaintiff in a case like the 1969 case in this instance the burden of persuading the district court either to include a specification that the dismissal is without prejudice or to permit an amendment. If plaintiff is unsuccessful, his recourse is to appeal. We think this view is consistent with the expedient purpose of the Rules." 454 F.2d 313, 315.

■■ In the case at bench, we too find that St. Joseph had the burden of persuading the trial judge to include a specification that dismissal was without prejudice if it wished to plead over. However, such language was not included. Thus, the order is *final* when judged against the backdrop of Rule 273 and *appealable* by reason of Rule 304(a). 58 Ill. 2d Rules 273, 304(a).

■■ Jefferson also questions whether the nature of St. Joseph's cause of action permits the dismissal of three of four counts to be an appealable order. When only one claim is involved although stated in different ways, a ruling on the pleadings which does not dispose of the single claim is interlocutory and, again, the trial court has no authority to confer appellate jurisdiction by merely finding that there is no just reason for a delaying of enforcement or appeal. (*Veach v. Great Atlantic & Pacific Tea Co.* (1959), 22 Ill. App. 2d 179, 159 N.E.2d 833.) St. Joseph points out that although the ultimate recovery is for breach of contract, the count not dismissed seeks damages for Jefferson's failure to pay for computer program maintenance while the three dismissed counts seek damages for

Jefferson's failure to provide St. Joseph with computer production work. ■■ Where two separate causes of action are joined in a single complaint, an order dismissing one count of the complaint is final even though the matters raised in the other count remain. (*Mills v. Ehler* (1950), 407 Ill. 602, 95 N.E.2d 848.) The test is whether the order appealed from constitutes a final determination of the rights of the parties with respect to a definite and separable portion of the subject matter. (*Northern Trust Co. v. Essaness Theatres Corp.* (1952), 348 Ill. App. 134, 108 N.E.2d 493.) Although closely related, the counts concerning *production* and the count involving *maintenance* are sufficiently definite and separate to meet the test of finality and are appealable because of the Rule 304(a) finding.

Having found that this court has jurisdiction, we turn now to the merits.

■■ St. Joseph contends that count I of its second amended complaint states a cause of action for breach of express contract. Jefferson allegedly breached the contract by failing to fulfill its obligation to supply St. Joseph with all, or substantially all, of its production work. The processing and maintenance agreement signed by the parties provided in paragraph 1 that:

> "1. St. Joseph Data Service, Inc., agrees to perform the services set forth below for Thomas Jefferson Life Insurance Company of America, and Thomas Jefferson Life Insurance Company of America agrees to pay for production services for a period of five (5) years commencing upon date of this agreement at the rate of $60.00 per clock hour for production. Production charges shall be billed on a monthly basis and shall be paid within ten (10) days of receipt of the bill."

Although the agreement does not indicate that Jefferson was obligated to supply St. Joseph with a certain quantity of production work, St. Joseph asserts that the absence of a quantity term for production services makes the contract ambiguous and subject to additional evidence indicating that this obligation was intended by the parties. An ambiguous contract is one reasonably susceptible to more than one meaning, or one obscure in meaning because of the indefiniteness of expression. (*Gardiakos v. Vanguard Communications, Inc.* (1976), 38 Ill. App. 3d 937, 350 N.E.2d 210; *Bulley & Andrews, Inc. v. Symons Corp.* (1975), 25 Ill. App. 3d 696, 323 N.E.2d 806.) If there is no ambiguity, the intention of the parties must be determined from the language of the contract itself. (*Gardiakos.*) Here, the absence of a production quantity term does not make the contract ambiguous, only contrary to the meaning St. Joseph wishes to assert. Since there is no ambiguity, there is no basis for admission of parol evidence concerning the intention of the parties or their course of performance.

According to St. Joseph, *Consolidated Coal Co. v. Schneider* (1896), 163 Ill. 393, 45 N.E. 126, indicates that St. Joseph should be allowed to introduce Jefferson's course of performance as evidence that Jefferson was obligated to allow St. Joseph to perform all, or substantially all, of its production work. In *Consolidated Coal*, the coal company leased their mine to Schneider who contractually agreed to furnish the company with specified railroad carloads of coal each week. But the contract was silent regarding which party was to furnish the cars. The court held that it was permissible to consider the interpretation the contracting parties placed upon the agreement at the time it was made or when it was performed as an aid to ascertaining its meaning.

That case, however, is distinguishable. Although the use of railroad cars was expressly contemplated by the contract, it failed to state whose duty it was to furnish them. Therefore, additional evidence was needed to ascertain the meaning of the agreement. Here, the contract does not contemplate that a minimum amount of production work would be given St. Joseph. In fact, St. Joseph agrees that one possible construction of the contract is that "production work" includes only that amount of work Jefferson elected to give St. Joseph.

■■■ St. Joseph also contends the contract contains a latent ambiguity. A contract has a latent ambiguity when—although its terms are clear on their face—extrinsic evidence creates uncertainty as to the meaning of the terms. (*Allendorf v. Daily* (1955), 6 Ill. 2d 577, 129 N.E.2d 673.) Although parol evidence is admissible to correct a latent ambiguity, courts may not construe into a contract provisions which are not there in order to obtain a more equitable result. (*Abingdon Bank & Trust Co. v. Bulkeley* (1945), 390 Ill. 582, 62 N.E.2d 447.) Since a quantity term is simply lacking in this case, there is no latent ambiguity.

St. Joseph next argues that Jefferson verbally represented to St. Joseph that it construed the contract to provide that St. Joseph was to perform all, or substantially all, of Jefferson's production work. St. Joseph contends that where a contract is understood by one of the parties in a certain sense and the other party knows that he understands it in that sense, then the contract is to be taken in that sense provided this can be done without making a new contract for the parties. (*Street v. Chicago Wharfing & Storage Co.* (1895), 157 Ill. 605, 41 N.E. 1108.) However, the court in *Street* stated that this rule was applicable when the contract was ambiguous and therefore open to extrinsic evidence. Here, the contract was not ambiguous.

■■ Rather than creating any ambiguity, the absence of a quantity term indicates that the contract lacks mutuality because St. Joseph agreed to perform services for Jefferson but Jefferson did not obligate itself to obtain any of its requirements for these services from St. Joseph. In *Hall*

*v. Gruesen* (1959), 22 Ill. App. 2d 465, 161 N.E.2d 345, the court found that the contract to purchase from one of the defendants as many tools as the plaintiff "would need" for the season possessed adequate mutuality of obligation.

However, the contract in this case does not state that Jefferson would obtain all of the production services it needed from St. Joseph. Thus, the contract is unenforceable. (See *Gardiakos*.) Since the express contract was not breached, the effectiveness of Jefferson's notice of termination and the damages allowed by the contract need not be discussed.

St. Joseph alleges in the alternative in count III of the second amended complaint that there was an implied contract based upon promissory estoppel. In count III St. Joseph asserts that defendant and its agents represented verbally and by their conduct a promise that all of its production work would be performed by plaintiff, that defendant and its agents knew (or were grossly negligent in not knowing) that the representation and conduct amounted to a false representation or fraudulent concealment of material facts, that defendant expected that plaintiff would act in reliance on its representations, that in reliance on defendant's representations plaintiff materially altered its position, that defendant had not allowed plaintiff to do any of its production work since February 20, 1976, and that as a result plaintiff has been damaged in the amount of $400,000.

■■ To state a cause of action for promissory estoppel, the cases require:
> "[T]hat there be a promise unambiguous in terms, that there be reliance on such promise by the party to whom it was made, that this reliance be expected and foreseeable by the party making the promise, and that the one to whom the promise is made in fact rely upon it to his injury." (*S. M. Wilson & Co. v. Prepakt Concrete Co.* (1974), 23 Ill. App. 3d 137, 139, 318 N.E.2d 722, 724.)

Plaintiff correctly points out that the allegations in count III include all these elements. However, the provisions of the contract control over any contrary and inconsistent allegations of the complaint. *Kuch & Watson, Inc. v. Woodman* (1975), 29 Ill. App. 3d 638, 331 N.E.2d 350.

The contract recites that St. Joseph "has the necessary computer time, equipment and personnel to perform the production and maintenance services required." Since the contract also provides that the "Agreement may be terminated at the end of one (1) year by 90 days written notice by either party" there was no assurance that St. Joseph would continually have Jefferson's production work. Thus, St. Joseph's allegations that it reasonably relied upon the promise and that Jefferson expected this reliance are inconsistent with the contract. Since those allegations of the complaint which are inconsistent with the contract can be disregarded, plaintiff has failed to state a cause of action for an implied

contract based upon promissory estoppel. *DeVito v. Village of Elburn* (1962), 37 Ill. App. 2d 59, 184 N.E.2d 890.

St. Joseph next urges that count IV of its second amended complaint states a cause of action for reformation of the written agreement and damages for breach of the reformed agreement. Paragraph 4 of count IV reads as follows:

> "4. That by mutual mistake of plaintiff and defendant, or by the mistake of plaintiff and the fraud of defendant in concealing its knowledge thereof, said written agreement was incorrectly drawn and did not express the actual agreement of the parties thereto, in that it was understood and agreed between said parties, prior to the preparation of said written agreement, that defendant would be obligated to have all or substantially all of its data processing work for the entire term of the July 1, 1973, agreement (Exhibit A) performed by plaintiff."

■■ Reformation of a written agreement rests upon the theory that the parties came to an understanding but in reducing it to writing, through mutual mistake or through mistake on one side and fraud on the other, some provision agreed upon was omitted. The action is to change the instrument as written so it will conform to the contract agreed upon by inserting provisions omitted or striking out the ones inserted by mutual mistake. *Harley v. Magnolia Petroleum Co.* (1941), 378 Ill. 19, 37 N.E.2d 760.

■■ Courts have the power to insert provisions in a written contract which the evidence clearly and convincingly shows were omitted through fraud, accident or mistake so as to make it express the intention of the parties. (*Phillips v. Salk, Ward & Salk, Inc.* (1974), 20 Ill. App. 3d 359, 314 N.E.2d 262; *319 South La Salle Corp. v. Lopin* (1974), 19 Ill. App. 3d 285, 311 N.E.2d 288.) Neither the presence of ordinary negligence (*Blumenfeld v. Neuman* (1953), 350 Ill. App. 306, 112 N.E.2d 742) nor the need for parol evidence (*Darst v. Lang* (1937), 367 Ill. 119, 10 N.E.2d 659; *Krabbenhoft v. Gossau* (1929), 337 Ill. 396, 169 N.E. 258) will bar such an action. However, it is still necessary to set up facts from which the conclusion of mistake is inevitable (or fairly deducible) since motions to dismiss a pleading admit facts well pleaded, but not conclusions unsupported by allegations of specific facts upon which such conclusions rest. *Lowrie v. City of Evanston* (1977), 50 Ill. App. 3d 376, 365 N.E.2d 923.

In this case, St. Joseph alleges mutual mistake or mistake and fraud as required to state a cause of action for reformation, but the allegations are unsupported by specific facts. Admittedly, in the absence of a revelation from Jefferson, St. Joseph cannot be expected to know whether Jefferson knew the intended quantity term was missing yet remained silent, or

whether the omission was merely overlooked. However, plaintiff could have pleaded facts answering the basic questions of who, when, and where so as to apprise Jefferson of the facts giving rise to its claim. (*Kuch & Watson, Inc.* ) Thus, the court properly dismissed count IV for failure to state a cause of action.

Affirmed.

REARDON, P. J., and CRAVEN, J., concur.