BRIARCLIFFE LAKESIDE TOWNHOUSE OWNERS ASSOCIATION, Plaintiff-Appellant, v. THE CITY OF WHEATON, Defendant-Appellee.

Second District No. 2—87—0726

Opinion filed May 19, 1988.—Rehearing denied June 30, 1988.

Francis D. Morrissey, Mark L. Karasik, Lisa Sopata, and John T. Coleman, all of Baker & McKenzie, of Chicago (Karen Kies DeGrand, of counsel), for appellant.

Edward J. Walsh, Jr., Chartered, of Wheaton (Edward J. Walsh, Jr., of counsel), for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Briarcliffe Lakeside Townhouse Owners Association (association), brought this action for declaratory and equitable relief seeking to compel defendant, City of Wheaton, to repair erosion damage on two lakes in a development known as Briarcliffe Lakeside Unit No. 1 (Briarcliffe Lakeside). The association's amended complaint alleges that the lakes are part of an easement granted to the city allowing the city to conduct and store storm water through, across, and

upon Briarcliffe Lakeside. Counts I, II, and III allege that the city has a legal duty to maintain the lakes as part of the easement. In the alternative, count IV seeks reformation of the easement so as to impose such a duty on the city. Finally, count V alleges that the city has breached a statutory duty to levy and collect special taxes to finance maintenance of the lakes. The trial court granted the city's motion for summary judgment on counts I, II, and III, and denied the association's cross-motion for summary judgment. The court subsequently denied the association's motion for reconsideration and granted the city's motion to dismiss counts IV and V. The association appeals. We affirm.

Briarcliffe Lakeside is a planned unit development consisting of a community of townhouses constructed in the early 1970's and located within the city. Prior to its development, the area encompassing Briarcliffe Lakeside was part of the southeast drainage basin flood control system, a natural drainage system serving a portion of southeast Wheaton. As part of the development the city required the developer to construct a storm water retention and detention system for the property. The developer constructed two wet bottom lakes on the property to act as retention ponds and designated them as lakes Nos. 1 and 2. The developer bore the full expense of the construction and constructed the lakes under the direction and supervision of the city. Because lakes Nos. 1 and 2 would provide storm water storage as part of the southeast drainage basin flood control system, the city further required the developer to grant an easement to the city to ensure that the flow of storm water would be left open and free flowing and that there would be continued storage of storm water in lakes Nos. 1 and 2 up to the natural high watermark. The easement provision, which is the subject of this appeal, is set forth on the final plat recorded with the Du Page County recorder's office and provides:

"An easement is hereby granted to the City of Wheaton to operate and maintain as a part of the Southeast Drainage Basin Flood Control System described as that part of Out Lot 1 containing Lake No. 1 and Lake No. 2 within the elevation contour 750.00 U.S.G.S. datum and abutting on Lorraine Road and Buena Vista Drive as hereon drawn and as more fully described in the Declaration of Covenants, Conditions, and Restrictions placed or to be placed upon the premises."

The declaration of covenants referred to in the easement provision creates the association and sets forth the association's responsibilities, including maintenance of all common areas in the development. Lakes Nos. 1 and 2 are part of the common areas of Briarcliffe Lakeside.

Over a period of time, the property surrounding lakes Nos. 1 and 2 has deteriorated through bank and shore erosion. The cause of the damage, not directly at issue on appeal, appears from the record to be controverted. The association asserts that the erosion is the result of fluctuating water levels within the lakes, while the city asserts that the damage is the result of sump pump discharges from the townhouses and the steep slope of the banks. In any event, the city has refused all requests by the association to repair the damage, stating that it has no duty to do so under the easement. The association brought the instant action in response. Counts I, II, and III of the association's amended complaint allege that the city has a duty to maintain the lakes pursuant to its easement and seeks declaratory and injunctive relief. Count IV, based in reformation, alleges in the alternative that the easement does "not reflect the true intention of the parties, because of mutual mistake," and seeks reformation of the easement to impose a duty on the city to repair the erosion damage. Finally, count V alleges that the city, through the use of its easement, is providing property owners in the area with a special service and is therefore in breach of its statutory duty to create a special service area and levy taxes to repair property harmed by the provision of that special service. The city filed its answer to counts I, II, and III, and motion to dismiss counts IV and V. The city subsequently filed a motion for summary judgment on counts I, II, and III. The association filed a cross-motion for summary judgment. The court granted the city's motion for summary judgment and denied the association's motion for summary judgment. The court subsequently denied the association's motion for reconsideration and granted the city's motion to dismiss count IV without prejudice and count V with prejudice. The association declined the court's invitation to replead and elected to stand on its count IV. On June 23, 1987, the court entered an agreed order finding that there was no just reason to delay enforcement or appeal of the orders granting the city's motion for summary judgment on counts I, II, and III, and motion to dismiss counts IV and V. The association brought this timely appeal.

The association first contends that the trial court erred in granting the city's motion for summary judgment and denying the association's motion for summary judgment on counts I, II, and III of the amended complaint. We disagree.

■ In reviewing the trial court's entry of a summary judgment, a reviewing court must first determine whether the trial court correctly ruled that no genuine issue of material fact has been raised. (*Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App.

3d 17, 21.) If no such issue has been raised, the court must determine whether the judgment was correctly entered for the moving party as a matter of law. (91 Ill. App. 3d at 21.) The reviewing court is not limited to the precise reasons expressed by the trial court in entering the summary judgment. 91 Ill. App. 3d at 21.

■ The central issue before the court regarding counts I, II, and III of the amended complaint is the construction and effect of the city's easement. The association alleges that the city's duty to repair the bank erosion on lakes Nos. 1 and 2 arises from the city's easement "to operate and maintain *Lake 1 and Lake 2.*" (Emphasis added.) No issue of fact is raised. The construction and legal effect of an instrument is a question of law. (*Northern Illinois Medical Center v. Home State Bank* (1985), 136 Ill. App. 3d 129, 142.) Further, an instrument creating an easement is construed in accordance with the intention of the parties. (*Coomer,* 91 Ill. App. 3d at 23.) In ascertaining the intention of the parties, the court should look at the words of the instrument and the circumstances contemporaneous to the transaction. (91 Ill. App. 3d at 23.) Such circumstances may include the state of the thing conveyed, the object to be obtained, and the practical construction given by the parties through their conduct. 91 Ill. App. 3d at 23.

■ Here, the instrument conveying the easement to the city is in the form of a final plat for the development filed for record in the Du Page County recorder's office on June 29, 1972, and recorded as document No. R72—36805. Paragraph four of the section of the plat captioned "City of Wheaton Utility Easement Provisions" grants the city an easement to operate and maintain lakes Nos. 1 and 2 as part of the southeast drainage basin flood control system. As a general rule the owner of an easement has not only the right but also the duty to keep the easement in repair. (*Flower v. Valentine* (1985), 135 Ill. App. 3d 1034, 1039.) However, as noted by the city in the instant case, the common law rule imposing the duty to maintain the easement on the easement owner is *inapplicable where there is an agreement to the contrary.* (See 135 Ill. App. 3d at 1039.) We believe that such an agreement exists in this case.

■ Incorporated by reference in paragraph four of the utility easement provisions of the final plat is the "Declaration of Covenants, Conditions and Restrictions for Briarcliffe Lakeside" (declaration of covenants). That document was prepared on behalf of the developer on June 20, 1972. There was some discussion both in the briefs and at oral argument regarding the nature and effect of the easement's reference to the declaration of covenants. Specifically at issue was the

phrase "and as more fully described in the Declaration of Covenants, Conditions and Restrictions placed or to be placed on the premises." The association argues that this phrase was used merely as a descriptive reference identifying the *contours* of the easement; however, the association does not explain how the declaration of covenants performs that function. Rather, we construe the reference to the declaration of covenants in the final plat as an incorporation of the provisions of that document, including its provisions regarding *maintenance*. The declaration of covenants was filed for record in the Du Page County recorder's office, *together with the final plat*, on June 29, 1972, and recorded as document No. R72–36806. That document creates the association and provides that the *association* is responsible for maintaining the common areas of Briarcliffe Lakeside, including lakes Nos. 1 and 2. Such maintenance includes landscaping and caring of grounds. Thus, as lakes Nos. 1 and 2 are clearly included as part of the common area, and as the declaration of covenants incorporated by reference in and filed together with the final plat clearly places the duty of maintaining the common area on the *association*, we conclude that the declaration of covenants constitutes an "agreement to the contrary" absolving the city of its common law *duty* to maintain the easement.

■ Moreover, beyond the wording of the instruments themselves, the city's motion for summary judgment was further supported by deposition testimony indicating the intention of the parties regarding maintenance responsibility. One such deponent, S. Louis Rathje, represented the developer in 1972 and was the *author* of the declaration of covenants. Rathje testified that one purpose of the declaration of covenants was to provide for a method of contribution from the various lot owners for maintenance of the out lots. Rathje stated that while he could not recall whether the issue of maintenance was ever discussed, he believed that "the philosophy of the City of Wheaton was that all responsibility for [Briarcliffe Lakeside] would be on the developer" and subsequent owners. Rathje further stated that it was the city's objective at that time to obligate the developer as much as possible. According to Rathje, the lakes were amenities for which the lot owners were to be responsible and it was not contemplated that the lakes would be the obligation of the city. Rathje also testified that the city wanted the right to take action to keep the easement open and free flowing if such action became necessary; however, it was the developer's obligation to maintain the out lots until they were transferred to the association at which time maintenance would become the responsibility of the association. In addition to Rathje, James Hughes,

vice-president and secretary of the developer at the time of the development, testified regarding the parties' intent. Hughes collaborated with Rathje in the preparation of the declaration of covenants. Hughes testified that the responsibility of maintaining the common grounds, including lakes Nos. 1 and 2, belonged to the association pursuant to the declaration of covenants. A third deponent, Aloysius McGurr, city engineer at the time of the development, testified that the city was not responsible for repairing erosion damage on the lakes, but rather was responsible only for keeping the drainage system open and flowing. Thus, despite the association's argument that the deposition testimony is not probative to the intent of the parties, the record indicates that the *principal parties* to the development and creation of the documents pertaining to the easement intended that maintenance of lakes Nos. 1 and 2 would be the responsibility of the association. Therefore, based on the record before us, we conclude that the trial court correctly entered summary judgment in favor of the city on counts I, II, and III of the amended complaint.

The association next contends that the trial court incorrectly granted the city's motion to dismiss count IV of the amended complaint for failure to state a cause of action for reformation of contract. We disagree.

■■ ■ The underlying basis for a reformation action is the existence of a mutual understanding between the parties which the parties agreed to reduce to writing, but in doing so, either through mutual mistake or mistake on one side coupled with fraud on the other, omitted some material provision. (*St. Joseph Data Service, Inc. v. Thomas Jefferson Life Insurance Co.* (1979), 73 Ill. App. 3d 935, 943; *Harden v. Desideri* (1974), 20 Ill. App. 3d 590, 596.) The action for reformation is to change the written instrument by inserting the omitted provision so that the instrument conforms to the original agreement between the parties. (*St. Joseph Data Service, Inc.*, 73 Ill. App. 3d at 943.) Thus, what is sought to be reformed *is not the understanding between the parties*, but rather the *written instrument* which inaccurately reflects it. (*Harden*, 20 Ill. App. 3d at 596.) Before a court may reform a contract on the grounds of mutual mistake, the party seeking reformation must *prove* by clear and convincing evidence that (1) there was an agreement between the parties; (2) the parties agreed to put their agreement into writing; and (3) a variance exists between the parties' original agreement and the writing. *Aetna Screw Products Co. v. Borg* (1983), 116 Ill. App. 3d 206, 211.

■■ ■ Of course, at this stage we are concerned solely with the sufficiency of the factual allegations and not matters of proof. How-

ever, from the above principles we can discern the minimal require-
ments for *stating a cause of action* for reformation. To state a cause
of action for reformation, the complaining party must allege (1) the
existence and substance of an agreement between the parties and the
identity of the parties to that agreement; (2) that the parties agreed
to reduce their agreement to writing; (3) the substance of the written
agreement; (4) that a variance exists between the parties' original
agreement and the writing; and (5) the basis for reformation (*e.g.*, mu-
tual mistake). (See *Aetna Screw Products Co.*, 116 Ill. App. 3d at 211;
*St. Joseph Data Service, Inc.*, 73 Ill. App. 3d at 943; *Harden*, 20 Ill.
App. 3d at 596; see also 66 Am. Jur. 2d *Reformation of Instruments*
§104 (1973).) In stating the basis for reformation, a party seeking ref-
ormation based on mutual mistake need not allege in express terms
that the written instrument was erroneously executed through mis-
take as long as his pleading sets out specific facts from which "such a
conclusion is inevitable or fairly deducible." (*Darst v. Lang* (1937),
367 Ill. 119, 125; see also *St. Joseph Data Service, Inc.*, 73 Ill. App.
3d at 943; *All Brake & Drive Unit Service, Inc. v. Peterson* (1979), 69
Ill. App. 3d 594, 597.) Such facts must be sufficient to answer the ba-
sic questions of who, when, and where so as to apprise the defendant
of the facts giving rise to the claim. (*St. Joseph Data Service, Inc.*, 73
Ill. App. 3d at 944.) For example, in *All Brake & Drive Unit Service,
Inc.*, although the seller of a tractor seeking reformation did not al-
lege mistake in that portion of his complaint stating what the original
purchase price of the tractor should have been, the court found his
complaint sufficient since he had alleged other facts from which it ap-
peared that the written agreement did not conform to the original
agreement of the parties to the sale. *All Brake & Drive Unit Service,
Inc.*, 69 Ill. App. 3d at 597.

 █ Turning to the case before us, the city argued that count
IV of the association's amended complaint was deficient in that the
association did not plead specific facts supporting a conclusion of mu-
tual mistake. The court sustained the city's motion to dismiss. We,
too, find the association's pleading insufficient to state a cause of
action for reformation. In reviewing paragraphs Nos. 1 through 11 of
count IV of the association's amended complaint, we are unable to
find any allegation that (1) the city and the association through the
association's predecessor in interest, Wiseman Construction Company,
*agreed* that the city would have the duty of maintaining lakes Nos. 1
and 2 including repairing bank erosion; (2) the parties agreed to re-
duce their agreement to writing; or (3) a variance existed between the
written instrument and the original agreement between the parties.

Although the association set forth the terms of the written instrument and stated that the written instrument did "not reflect the true intention of the parties because of mutual mistake," the association has nonetheless failed to allege sufficient facts to state a cause of action. (See *Aetna Screw Products Co.*, 116 Ill. App. 3d at 211.) Therefore, we hold that the trial court correctly dismissed count IV of the association's amended complaint. We note that in dismissing count IV of the association's amended complaint, the court offered the association an opportunity to replead that count. Curiously, the association declined the court's invitation, instead opting to stand on its count IV and participating in an agreed order dismissing count IV with prejudice. Accordingly, the association is not entitled to any further opportunity to replead.

The association's final contention is that the trial court incorrectly dismissed count V of its amended complaint alleging that the city breached a statutory duty to levy taxes to maintain and repair the lakes as part of a special service area. We disagree.

Section 2 of "An Act to provide the manner of levying or imposing taxes for the provision of special services to areas within the boundaries of home rule units and non-home rule municipalities and counties" (Special Services Act) (Ill. Rev. Stat. 1985, ch. 120, par. 1302) defines "special service area" as a contiguous area within a municipality or county in which special governmental services are provided and paid for from taxes levied or imposed upon property within that area. The Illinois Constitution empowers counties and municipalities which are not home rule units to levy or impose additional taxes upon areas within their boundaries for the provision of special services to those areas and for the payment of any debt incurred by the provision of those special services. (Ill. Const. 1970, art. VII, §7(6).) This power is similarly granted to home rule units. (Ill. Const. 1970, art. VII, §6(1)(2).) When a municipality or county exercises its power to provide special services and creates a special service area, section 1 of the Special Services Act provides that the municipality or county shall levy a tax for the provision of the special service or to pay any debt incurred in the provision of that service. Ill. Rev. Stat. 1985, ch. 120, par. 1301.

In the instant action, the association argues that the city, by virtue of using its easement, has exercised its discretion and *created* a special service area. Thus, the association argues that the city has a statutory obligation to levy taxes to keep the special service area in repair and its failure to do so constitutes a breach of statutory duty. While the statutory language seems to support the association's

contention that once a special service area is created, section 1 of the Special Services Act requires the city to levy taxes to provide the special service or provide for payment of debt incurred by providing the special service (see Ill. Rev. Stat. 1985, ch. 120, par. 1301), we cannot find support for the association's argument that the city's mere use of its easement constitutes the *creation* of a special service area. In fact, an objective reading of the Special Services Act indicates that the method for creating a special service area is by formal ordinance subject to public hearings and objections. (See Ill. Rev. Stat. 1985, ch. 120, par. 1305.) Thus, it appears that the creation of a special service area is a discretionary act with the city, and there is nothing in the record to indicate that the city has exercised that discretion in a method pursuant to section 5 of the Special Services Act (Ill. Rev. Stat. 1985, ch. 120, par. 1305). We agree with the city that the association's request that the city be compelled to "exercise its power and authority to create a special service area" is in *effect* a request for a writ of *mandamus*, and *mandamus* will not lie to review a discretionary act. (*People ex rel. Rappaport v. Drazek* (1975), 30 Ill. App. 3d 310, 314.) As the city has *not* exercised its discretion to create a "special service area," it cannot be concluded that the city breached its statutory duty to levy taxes to keep the special service area in repair. Therefore, we conclude that the trial court properly dismissed count V of the association's complaint.

Accordingly, for the reasons set forth above, we find that the trial court correctly entered summary judgment in favor of the city on counts I, II, and III of the association's amended complaint. We further find that the trial court correctly dismissed counts IV and V of the association's amended complaint.

Affirmed.

HOPF and DUNN, JJ., concur.