JAMES S. SMITH *et al.*, Plaintiffs-Appellants and Counterdefendants, v. JACK NICKLAUS DEVELOPMENT CORPORATION OF ILLINOIS, Defendant (Harvey M. Silets *et al.*, Defendants-Appellees and Counterplaintiffs; Wynstone Property Owners, Inc., Counterdefendants).

Second District   No. 2—91—0404

Opinion filed February 20, 1992.

McLAREN, J., specially concurring.

Stephen T. Saporta, of Katz, Randall & Weinberg, of Chicago (Jeffrey H. Bunn, of counsel), for appellants.

Silets & Martin, Ltd., and Sachnoff & Weaver, Ltd., both of Chicago (Locke E. Bowman and Arnold Pagniucci, of counsel), for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

The trial court dismissed the amended verified complaint of plaintiffs, James and Cynthia Smith. On appeal, plaintiffs argue that the court below erred in doing so. No issues are raised regarding the injunction entered pursuant to a third-party complaint filed by Harvey and Elaine Silets (the Silets) against plaintiffs and Wynstone Property Owners Association (WPOA).

This case arises out of the development of Wynstone, a 750-acre residential community built around a Jack Nicklaus signature golf course. In developing that community, Jack Nicklaus Development Corporation (JNDC) had to deal with environmental issues and the concerns of adjacent property owners, including defendants, the Silets. The Silets owned property which is located off Arrowhead Lane in North Barrington, Illinois, and which is situated immedi-

ately to the west of the Wynstone development. Since the 1970's, the Silets have owned their property which, prior to the Wynstone development, was secluded and rural in character. A prominent feature of the Silets' property is a pond which is adjacent to their residence and also borders upon the Wynstone development. Before Wynstone's development, the Silets viewed a forested, natural setting from their house across their pond.

The Silets first learned in 1986 of JNDC's intention to develop a residential and golfing community in the area next to their property. The Silets were concerned as to the impact said development of the adjacent property might have upon the water level and water quality of their pond and upon their view across the pond.

These concerns, and others, were dealt with during a process of negotiations between the Silets and JNDC which culminated in the execution of the unrecorded December 1987 agreement and the creation of a conservation easement and a drainage easement, both of which were recorded. The conservation easement burdens the three lots in the Wynstone development which are situated side by side at the west border of the development, adjacent to the Silets' property and across the pond from the Silets' house. Lot G-11 (G-11), which plaintiffs purchased on August 10, 1988, is the southernmost of the three. The conservation easement applies to a rectangular area, roughly along the pond's edge, which runs north to south across the entire width of the three affected Wynstone lots and extends from the west border of the development (the property line shared with the Silets) to a distance 75 feet to the east of that property line.

The drainage easement burdens the same three lots. On G-11, the physical boundaries of the drainage easement are a triangular area in the northwest corner of the lot formed by the west and north property lines and a diagonal line bisecting those two property lines at a distance (on both property lines) of more than 100 feet from their intersection. Thus, the northwest corner of the plaintiffs' property is subject both to the conservation easement and to the drainage easement.

Under the unrecorded December 1987 agreement, among other concessions, JNDC promised to construct a retention basin on G-11, G-12 and G-16 and to construct a berm on G-11 and G-12 at the shoreline between the retention basin and the Silets' pond. The purpose for the retention basin and the berm was to prevent erosion, runoff or other damage to the Silets' pond during and after the construction of the Wynstone development. In the agreement, JNDC also agreed to establish the conservation easement, consist-

ing of the westernmost 75 feet of the same three lots. Finally, JNDC promised that, after the berm was constructed, it would landscape across the berm for the purpose of screening the Silets' property from the development. The Silets were given a right of reasonable approval over the landscaping.

The plaintiffs first viewed G-11 in August 1987 at a time when they were considering building a house in the Wynstone development. Prior to viewing G-11, the Smiths had been provided with a plat of survey which showed a triangular area in the northwest corner of G-11, indicating a retention and drainage area that would run across that particular portion of the property. The area in question was planned for the collection of surface water runoff from other areas of Wynstone, before it drained into the above-mentioned pond.

During their initial viewing of the G-11 property, plaintiffs inquired of the JNDC representative what was planned for the drainage area but received no definite answer. In September 1987, plaintiffs decided to buy G-11 and retain an architect, general contractor and landscape architect. The resulting house plan sought to maximize the views of the pond.

Late in 1987 or 1988, JNDC began working on the retention and drainage areas. By August 10, 1988, when plaintiffs formally closed on the purchase of G-11, the work on said area had progressed substantially. At some point, seven Austrian pines were planted in the berm. Plaintiffs testified that the pines were not planted until after the August 1988 closing. Defendants presented evidence that the pines were planted in July 1988.

There was a conflict in the evidence as to whether Mrs. Smith, during a July 1988 conversation with Mrs. Silets, had been specifically advised that the Silets had the right of approval over the landscaping to be installed on the berm. Mrs. Silets testified to so advising Mrs. Smith, who denied the conversation took place.

On the day before their closing, plaintiffs met with a JNDC representative, who told them that JNDC was responsible for landscaping in the retention basin and on the berm. This representative assured plaintiffs that the landscaping would be of high quality consistent with other common areas in the development. Plaintiffs did not pursue this matter further.

After the closing, the parties met on a number of occasions to iron out their differences as to the landscaping of the subject area. No satisfactory resolution was achieved. In November 1989, a crew of the JNDC landscape workers appeared on G-11 and installed a

screen of evergreen trees on the berm between the pond and the drainage and retention basin. According to plaintiffs' landscape architect, said evergreens will grow to a height of approximately 45 feet at maturity, and these trees will quickly grow together to create a solid screen between G-11 and the pond. Moreover, at an unspecified time, a fence which followed the general perimeter line of the Wynstone development was installed along the berm's crest. As stated above, plaintiffs filed their complaint on November 15, 1989.

On November 15, 1989, plaintiffs filed a verified complaint which primarily sought injunctive relief. The only named defendant was JNDC. Plaintiffs claimed that the installation of the contested landscaping and disputed placement of the perimeter fence would constitute an unlawful trespass, resulting in irreparable damage to their property. Based upon the alleged injury, plaintiffs sought injunctive relief enjoining JNDC from undertaking the disputed landscaping. The trial court denied plaintiffs' motion for a temporary restraining order, finding that the temporary relief being sought was also the ultimate relief requested in plaintiffs' complaint.

On March 12, 1990, the trial court granted JNDC's motion to add the Silets as necessary defendants. On March 26, 1990, plaintiffs filed an amended verified complaint against defendants, which additionally alleged that defendants' undertakings with respect to landscaping and fence placement had wrongfully denied plaintiffs their view of the subject pond and their right to the use and enjoyment of their property.

On May 31, 1990, the Silets filed, *inter alia*, a counterclaim naming plaintiffs and WPOA as counterdefendants. The counterclaim sought to enjoin counterdefendants from violating the restrictions imposed by the recorded drainage easement and conservation easement, which will be discussed below. The Silets also sought reasonable access to the area subject to said easements for purposes of monitoring counterdefendants' compliance with the restrictions.

Finally, on September 24, 1990, plaintiffs filed a second count to their amended verified complaint, alleging that any landscaping installed in or around the subject drainage and retention was required to conform with the guidelines set out in the manual entitled "Procedures and Standards for Urban Soil Environment and Sedimentation Control in Illinois" (Procedures and Standards), and, further, alleging that the landscaping installed by JNDC neither conformed with nor was intended to conform with said guidelines.

After a trial held intermittently over three months, the trial court found for the defendants and dismissed both counts of the

Smiths' complaint. As to the Silets' counterclaim, the court found that plaintiffs had removed vegetation from the conservation area in violation of the conservation easement. The trial court therefore entered an injunction prohibiting plaintiffs from removing any existing trees or plants from said area. Plaintiffs then appealed the dismissal of their complaint. They do not appeal the trial court's granting the injunctive relief sought in the Silets' counterclaim.

■ We first address the motion of the Silets, JNDC and WPOA to strike portions of the plaintiffs' reply brief. Said motion was ordered to be taken with the case. Specifically, the motion maintains that the reply brief includes an argument which was not made before the trial court and was not made in the Smiths' opening brief. Plaintiffs' disputed argument asserts that the recorded easements are sufficiently clear and unambiguous so as to obviate the consideration of parol evidence in ascertaining the signatories' intentions. We do not find the motion to strike well taken as there are portions of both the trial record and the plaintiffs' opening brief which relate to this argument. Accordingly, we deny defendants' motion to strike this argument portion of the reply brief.

Next, we address plaintiffs' argument that the trial court erred in dismissing count I of their complaint. Plaintiffs contend that the trial court made four errors in dismissing count I of the complaint, namely: (1) it erred in finding that the main purpose of the conservation easement was to screen the Silets' view of the Smiths' home; (2) it erred in finding that the drainage and retention easement specifically authorized the planting of trees in and around the drainage and retention basin; (3) it erred in finding that the drainage and retention area is a common area of the Wynstone residential development; and (4) it erred in finding that there is insufficient evidence in the record to order the relocation of the perimeter fence.

Initially, we note that the judgment of the trial court should not be disturbed unless it is contrary to the manifest weight of the evidence. (*Ruggio v. Ditkowsky* (1986), 147 Ill. App. 3d 638, 642.) Moreover, this court may not substitute its opinion for that of the trial court, especially where the trial court had the opportunity to observe the witnesses and determine their credibility. *Village of Lakemoor v. First Bank* (1985), 136 Ill. App. 3d 35.

In making its ruling on count I of the complaint, the trial court initially found that plaintiffs were not charged with knowledge of the unrecorded agreement between JNDC and the Silets. Subsequently, the trial court made the following summary of its findings as to count I:

"So based upon the provisions of the [r]etention easement wherein Jack Nicklaus has the right to make plantings, specifically including trees on the berms, and in light of the Conservation Easement that precludes the removal of any plant from the [r]etention area, and based on the fact that the Smiths were aware that the [r]etention easement was a common area, and based on the fact that Wynstone had the right to maintain common areas, the Court finds that Jack Nicklaus and Wynstone had the right to plant and maintain the berm and the [r]etention area, and therefore, no trespass was committed. As a result, plaintiffs' request in Count I that all objected to landscaping be removed by defendants is denied."

■ We first look at the issue of whether the trial court erred in finding that the recorded easements authorized the planting of trees in and around the drainage and retention basin. As neither defendant takes issue with the trial court's finding that plaintiffs were not charged with knowledge of the unrecorded agreement, we will not refer to said agreement in our consideration of this issue. An instrument creating an easement is construed in accordance with the intentions of the parties. (*Briarcliff Lakeside Townhouse Owners Association v. City of Wheaton* (1988), 170 Ill. App. 3d 244.) In determining the parties' intentions, the court should look at the words of the instrument and the circumstances contemporaneous to the transaction. (*Briarcliff Lakeside Townhouse Owners,* 170 Ill. App. 3d at 249.) The circumstances may include the state of the thing conveyed, the object to be obtained and the practical construction given by the parties through their conduct. *Coomer v. Chicago & North Western Transportation Co.* (1980), 91 Ill. App. 3d 17.

■ Plaintiffs initially maintain that the trial court in construing the easements should have referred only to those circumstances that were disclosed to plaintiffs prior to their purchase of G-11. We do not agree. Defendants are correct in arguing such contention conflicts with the basic rule that an easement, once created and recorded, runs with the land and is a burden or benefit for all successors in the chain of title. See, *e.g., Flower v. Valentine* (1985), 135 Ill. App. 3d 1034.

■ Plaintiffs further argue that there is nothing expressed in the easements which could reasonably be construed as notice to a disinterested third party that JNDC would be installing a row of evergreens that would deprive the purchaser of G-11 a pond view. Plaintiffs also point to the testimony of Harvey Silets wherein he

conceded that two recorded easements and the unrecorded agreement were intended to be read in conjunction to understand fully the scope of each party's rights and responsibilities.

Further, plaintiffs contend that the trial court should not have relied on a document described as sheet No. 7. However, the drainage and retention easement specifically states:

"2. Grantor [JNDC] shall install those improvements on the Easement Premises as set forth in the Subdivision Development Plans, sheet #7 revised December 17, 1987, prepared by Spaceco pursuant to the Gewalt-Hamilton report dated December 15, 1987 ***."

Plaintiffs maintain that sheet No. 7 does not represent what type of vegetation was to be planted in the subject area. They contend that section A-A of sheet No. 7 in which pine trees are depicted on both sides of the berm is merely an artist's embellishment and not intended to represent the intended landscaping of the berm.

Defendants argue that the recorded easements provide ample support for the trial court's decision. They note that paragraph 2 of the drainage easement provides that JNDC shall install "improvements" as set forth in sheet No. 7. There is no limitation upon what is included in the term improvements, except that those improvements be set forth in sheet No. 7. Defendants further assert that section A-A of sheet No. 7 graphically demonstrates that the planting of pine trees on the berm was contemplated by the parties concerned.

Defendants also point to paragraph 3 of the drainage easement, which provides that the WPOA agreed to maintain "all plantings installed by Grantor [JNDC]." This paragraph does not limit what plantings are permitted on the berm. Defendants further contend that there is no question that the term "improvements" used in paragraph 2 of the drainage easement relates to the term "plantings" found in paragraph 3 of said documents. They conclude that since the improvements on sheet No. 7 specifically include trees on the berm, JNDC had the right to plant trees there under the drainage easement's terms.

As to the inconsistencies in Harvey Silets' testimony, defendant essentially argues that these statements are taken out of context and that the relevant portions of his testimony regarding the recorded easements support the trial court's finding. Mr. Silets, who signed the conservation easement and negotiated the drainage easement, testified that the purpose of installing trees on the berm was to reestablish the natural buffer in the drainage easement portion

of the conservancy area, which had to be disturbed in order to install mechanical soil erosion controls. Mr. Silets specifically understood that the conservation easement, because it prohibited the removal of any vegetation, implicitly authorized and required JNDC to reestablish vegetation on the berm in order to screen the Wynstone development from the Silets after the mechanical erosion controls had been installed. Mr. Silets also understood that sheet No. 7 would be prepared in such a way as to reflect pine trees being installed on the berm and, thus, to authorize the installation of vegetation.

Furthermore, Mr. Charles Reeves, executive vice-president of JNDC, testified that the two recorded easements when read together adequately covered the matters set forth in the unrecorded agreement so that it was not necessary to record said agreement.

We agree with defendants' argument. The trial court's decision that the pine trees planted in the berm were not a trespass on plaintiffs' property was supported by the recorded easements. The drainage easement's language leaves little doubt that plantings were intended for the berm, and it did not limit the type of vegetation planted thereon. Of critical importance is the depiction of the proposed planting on the berm found in section A-A of sheet No. 7, which was available to plaintiffs prior to the August 1988 closing. Even a cursory perusal of sheet No. 7 would have put them on notice of defendant JNDC's intention to plant pine trees on the berm. The illustration is clear and straightforward, and it supports the trial court's determination of this issue. Plaintiffs' failure to ascertain the type of plantings intended by the recorded easements is one of their own making.

Moreover, the inconsistencies in Harvey Silets' testimony are not of such significance as to undermine the trial court's decision. Accordingly, we hold that the court below did not err in finding that under the terms of the easement defendant, JNDC, had the right to plant pine trees on the berm.

■ Next, plaintiffs argue that the trial court erred in finding that the drainage and retention area on G-11 is a common area of the Wynstone development. In its summary of findings as to count I, the court below found all the parties viewed the drainage and retention area as a common area not under plaintiffs' control.

We find plaintiffs' argument unpersuasive, particularly in light of their testimony at trial. Both acknowledged that prior to purchasing G-11 they were told that the landscaping of the drainage easement would be done similarly to other common areas in the de-

velopment. Also, it is evident that plaintiffs considered the landscaping of the subject area to be the WPOA's responsibility. Furthermore, Mr. Smith admitted that he did not present a plan for landscaping the subject area because he did not want to assume responsibility for paying for the landscaping. Given plaintiffs' action and testimony, we find the trial court's decision as to this issue was not against the manifest weight of the evidence.

■ As part of their argument, plaintiffs contend that the trial court erred in sustaining objections to testimony concerning the landscaping of certain Wynstone common areas. As defendants argue, this testimony was irrelevant to the issue of who controlled landscaping of the subject area, and, accordingly, the trial court properly sustained the objection to such testimony.

■ Plaintiffs' final argument pertaining to count I is that the trial court erred in finding insufficient evidence to relocate the perimeter fence. The trial court found that there was insufficient evidence to make a finding as to the distance of the fence from the lot line. Specifically, it found that none of the documents admitted into evidence conclusively show the actual distance between the lot line and the fence's location. The trial court also determined that the conservation easement did not specify the placement of the fence. Plaintiffs argue that there was sufficient evidence to support affirmative relief on their behalf. We do not agree.

Plaintiffs admit that the documentary evidence was vague as to where the fence was actually situated. Moreover, plaintiffs do not adequately address the fact that paragraph 3 of the conservation easement provides that the perimeter fence must be installed within the conservancy area and places no restriction as to where, within said area, the fence is to be installed. Given these inadequacies in plaintiffs' argument as to this issue, we find that the trial court's decision was not against the manifest weight of the evidence.

■ Next, plaintiffs argue that the trial court erred in dismissing count II of their complaint. In summarizing its findings as to count II, the court below stated in pertinent part:

"Mr. Barnes [the Smiths' landscape architect] was the only witness to testify that the existing plantings did not comply with the requirements of plaintiffs' Exhibit 22 [The Illinois Standards and Procedures for Urban Erosion and Sedimentation Control]. I find Mr. Barnes's testimony not very persuasive, since when asked the basis for his opinion at Page 716 and 717 of the December 3, 1990 transcript, the only reason he gave was that the retention area was not seeded very

promptly. That has little to do with the present state of erosion controls.

\* \* \*

While Mr. Barnes's plan may or may not be superior to the plants and mulch used, I cannot find, based on the specific provisions of plaintiffs' Exhibit 22, that the present plantings and mulchings of the berm are inconsistent with plaintiffs' Exhibit 22."

Specifically, plaintiffs argue that the trial court misconstrued the opinion testimony of two expert landscape architects with respect to the landscaping of the drainage and retention area. They point to the testimony of Brian Barnes (plaintiffs' landscape architect) and Michael Schoppe (defendants' landscaping architect). Both Barnes and Schoppe prescribed a landscaping scheme which employed grasses and perennial ground cover to deal with erosion and sedimentation problems. Further, Barnes opined that the landscaping done by JNDC does not satisfy the Procedures and Standards guidelines. Plaintiffs contend that the trial court did not give Barnes' testimony the weight it was due.

Plaintiffs also argue that the trial court ignored material evidence which demonstrated that the current landscaping scheme had not successfully prevented erosion and sedimentation. Entered into evidence were photographs taken by Mr. Smith following a substantial rainstorm. These photographs indicate runoffs of mulch and soil from the berm into the retention basin and into the drain pipe which runs under the berm from the basin to the pond. Plaintiffs conclude by asserting that this evidence demonstrates that the existing landscaping plan was never intended to address sedimentation and erosion problems but simply to screen the Silets' view of plaintiffs' house.

In response, defendants point to concessions made by Brian Barnes during his testimony. In the Procedures and Standards manual, trees are included in the definition of landscaping. Barnes conceded that trees are part of the vegetation contemplated by said manual. Moreover, Barnes admitted that trees are particularly appropriate where the ground is sloped. Barnes also conceded that the day lilies planted in the berm were an acceptable way to stabilize the area according to the Procedures and Standards manual.

Defendants further argue that plaintiffs' photographs do not prove that erosion control is not functioning properly. Defendants point out that the photographs were taken after one of this area's frequent "100-year event" rainfalls and that as a result mulch run-

off is a predictable result, as well as standing water in the retention basin.

We agree with plaintiffs that a better plan for erosion control could have been implemented on the berm. Yet, we do not find the existing plantings plus the mulch to stray far enough from the recommendations of the Procedures and Standards manual to serve as a basis for reversing the trial court's dismissal of count II.

Affirmed.

INGLIS, P.J., concurs.

JUSTICE McLAREN, specially concurring:

I specially concur in this opinion because I wish to emphasize a matter contained in the opinion. The majority states "[a]n instrument creating an easement is construed in accordance with the intention of the parties. [Citation.] In determining the parties' intentions, the court should look at the words of the instrument and the circumstances contemporaneous to the transaction." 225 Ill. App. 3d at 391; *Townhouse Owners Association v. City of Wheaton* (1988), 170 Ill. App. 3d 244, 249.

I wish to emphasize the "intent of the parties" means the grantor and the grantee, not the Silets or any other third party who might be the beneficiary of an unrecorded easement or document claiming some right or interest in the property in question. The grantor, Jack Nicklaus Development Corporation, submitted several landscaping proposals to the Silets. Although the sundry submissions suggest that the final plan was evidence of the Silets' desires, rather than the grantor's intent as to what was to be implemented, I agree with the majority that the court's findings are not against the manifest weight of the evidence.