No. 2--07--1084          Filed: 4-21-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| SHARON W. BRAUNLING, | ) | of Lake County. |
| | ) | |
| Petitioner and | ) | |
| Counterrespondent-Appellant, | ) | |
| | ) | |
| and | ) | No. 06--D--977 |
| | ) | |
| SCOT W. BRAUNLING, | ) | |
| | ) | Honorable |
| Respondent and | ) | Diane E. Winter, |
| Counterpetitioner-Appellee. | ) | Judge, Presiding. |

JUSTICE CALLUM delivered the opinion of the court:

Petitioner, Sharon W. Braunling, and respondent, Scot W. Braunling, crosspetitioned for dissolution of their marriage. In the course of the proceedings, issues arose concerning the parties' premarital agreement. Upon Sharon's motion, the trial court certified two questions, and we granted her leave to appeal. We answer the certified questions in the negative and remand the cause.

I. BACKGROUND

On September 19, 1995, the parties were married in Long Grove. On the same day, they executed a premarital agreement, which Scot had drafted. The agreement provides that, in the event of divorce, neither party shall receive any property from the other's estate, except that Sharon will receive 10% of Scot's "annual W-2" for every year of marriage, to be paid in a lump sum not

exceeding $75,000. Also, she will receive 20% of the parties' home "that they live in at the time of divorce."

Paragraph 9 of the agreement states:

"9. This Agreement shall be effective only in the event the contemplated marriage between [Scot] and [Sharon] actually takes place and is existing as of the date of death of either party. If the marriage does not take place or if it is terminated for any reason other than death of [Scot] or [Sharon], regardless of fault, this Agreement shall be null and void."

No children were born to or adopted by the parties during the marriage. On May 12, 2006, Sharon petitioned for dissolution of the marriage, and, on July 6, 2006, Scot filed his response and counterpetitioned for dissolution. In his counterpetition, Scot sought to interpose the parties' premarital agreement.

On December 26, 2006, Scot moved for a declaratory judgment (735 ILCS 5/2--701 (West 2004)), seeking an order declaring the parties' premarital agreement valid, enforceable, and binding. Sharon moved to dismiss Scot's motion (735 ILCS 5/2--615 (West 2004)), arguing, inter alia, that his motion was precluded by In re Marriage of Best, 369 Ill. App. 3d 254, 258, 262 (2006) (holding that declaratory judgment did not satisfy termination-of-controversy requirement of declaratory judgment statute, where it merely decided whether premarital agreement provided an affirmative defense to the respondent's demands for fees and support without resolving the claims associated with those demands), aff'd in part & rev'd in part, No. 104002 (March 20, 2008) (reversing the appellate court's judgment and holding that declaratory judgment that was entered before the final order in the dissolution proceeding was reviewable on appeal). In his response, Scot argued that the appellate court's Best decision was distinguishable and that Sharon could not attack his motion with a motion

to dismiss. He asserted that the trial court's declaration as to the validity of the agreement would necessarily resolve all issues incident to the adjudication of the crosspetitions for dissolution of the marriage.

On March 28, 2007, the trial court ruled that Scot's motion for declaratory judgment would stand as count II of his counterpetition for dissolution and that Sharon's response would stand as her answer.

On April 26, 2007, Sharon moved for partial summary judgment, seeking judgment in her favor on count II of Scot's counterpetition. Relying on paragraph 9 of the premarital agreement, Sharon argued that, because the parties are terminating their marriage by reason other than either of their deaths, the agreement is null and void and she is entitled to summary judgment on count II, which seeks to implement the agreement.

On May 30, 2007, in response to Sharon's motion for partial summary judgment, Scot counterpetitioned for reformation of the premarital agreement. He argued that the agreement is not null and void and must be reformed because the second sentence in paragraph 9 differs from the parties' original agreement, due to a mutual mistake of fact.

Sharon moved to strike and dismiss Scot's counterpetition for reformation (735 ILCS 5/2--619 (West 2004)), arguing that the action is time-barred by the 10-year limitations period in section 13--206 of the Code of Civil Procedure (Code) (735 ILCS 5/13--206 (West 2004)), which began to run when the agreement was executed. Scot responded that section 13--206 does not apply and that, alternatively, if it does, his reformation claim did not accrue until grounds existed for dissolution. Scot argued that a typographical error, which he did not specify, should not invalidate the agreement's

specific dissolution provisions. Sharon replied that any contract ambiguities should be construed against the drafter (i.e., Scot).

On September 24, 2007, the trial court denied Sharon's motion for partial summary judgment and her motion to strike and dismiss Scot's counterpetition for reformation of the premarital agreement. The court found that the limitations period for Scot's reformation action began to run when the grounds existed for a dissolution of the marriage. It further found that summary judgment was not warranted, due to the pendency of Scot's reformation petition. Rather than proceed to trial, however, the court found that Sharon's motions presented questions as to which there are substantial grounds for differences of opinion and that an immediate appeal from its decision will materially advance the ultimate termination of the litigation. See 155 Ill. 2d R. 308(a). Accordingly, upon Sharon's motion, the trial court, on October 11, 2007, certified two questions:

(1) Does the 10-year statute of limitations for contract actions, found in section 13--206 of the Code, bar an action for reformation of a premarital agreement brought more than 10 years after the agreement's execution?

(2) Did the trial court err, as a matter of law, by not entering partial summary judgment for Sharon?

On October 25, 2007, Sharon petitioned this court for leave to appeal under Supreme Court Rule 308 (155 Ill. 2d R. 308). On December 6, 2007, this court granted leave to appeal.

## II. ANALYSIS

### A. Limitations Period

As to the first certified question, Sharon relies on section 13--206 of the Code, which provides, in relevant part:

"Except as provided in Section 2--725 of the 'Uniform Commercial Code', actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued[.]" 735 ILCS 5/13--206 (West 2004).

Sharon asserts that the statute mandates that the limitations period begins to run when the instrument is executed. She notes that the parties executed their premarital agreement on September 19, 1995, and contends that the last day for Scot to have filed a reformation action would have been on September 19, 2005. Because he did not file his petition until May 2007, she concludes that his reformation action is time-barred.

In his brief, Scot relies for the first time on the Illinois Uniform Premarital Agreement Act (Act) (750 ILCS 10/1 et seq. (West 2004)). Section 9 of the Act provides:

"Limitations of Actions. Any statute of limitations applicable to an action asserting a claim for relief under a premarital agreement is tolled during the marriage of the parties to the agreement. However, equitable defenses limiting the time for enforcement, including laches and estoppel, are available to either party." (Emphasis added.) 750 ILCS 10/9 (West 2004).

Scot asserts that the foregoing provision tolls the 10-year limitations period in section 13--206 of the Code (assuming that section applies). He contends that his petition to reform the premarital agreement is not time-barred, because he filed his petition less than one year after the dissolution proceedings commenced.

In her reply brief, Sharon initially argues that Scot's reliance on the Act is waived because he did not raise it in the trial court. We find Sharon's argument unavailing because the general issue of

the statute of limitations was addressed by the parties in the trial court. Sharon raised the statute of limitations in response to Scot's petition for reformation. In response to Sharon's argument in the trial court, Scot argued that section 13--206 of the Code does not apply to the parties' agreement. Furthermore, he argued in the alternative that, if the statute applied, his reformation claim did not accrue until grounds existed for dissolution of the parties' marriage--the parties' filing of their dissolution petitions. Scot's invocation of section 9 of the Act is, in essence, identical to his second argument--that the limitations period is tolled during the parties' marriage. The only difference is that he now has statutory authority to support his argument. Because the limitations issue was before the trial court, Sharon's waiver argument fails. See also Travelers Casualty & Surety Co. v. A.G. Carlson, Inc., 368 Ill. App. 3d 519, 522 (2006) (because the issue of the applicable limitations period was before the trial court, parties did not waive their limitations-period arguments, where they had raised different limitations periods below).

Having determined that Scot's invocation of the Act is not waived, we turn to the parties' arguments addressing the statute. The interpretation of a statute presents a question of law, which we review de novo. Franz v. Calaco Development Corp., 352 Ill. App. 3d 1129, 1149-50 (2004). The fundamental rule of statutory interpretation is to give effect to the legislative intent. Wilk v. Wilmorite, Inc., 349 Ill. App. 3d 880, 886 (2004). Where a statute is unambiguous, it must be enforced as enacted, and a court cannot depart from its plain language by reading into it exceptions, limitations, or conditions that conflict with the clearly expressed legislative intent. Wilk, 349 Ill. App. 3d at 886.

Sharon argues that section 9 of the Act does not apply to Scot's reformation action. She contends that the statute applies to an action for relief "under a premarital agreement" (750 ILCS

10/9 (West 2004)), whereas a reformation action seeks to change the instrument as written so as to conform it to the parties' actual agreement by inserting omitted provisions or striking out those inserted by mutual mistake. Thus, Scot's reformation action does not seek relief "under" the agreement. Sharon characterizes Scot's action as a collateral attack on the parties' agreement in order to change it to an agreement different from the one he signed.

We find Sharon's argument unpersuasive. The Act applies to premarital agreements executed on or after January 1, 1990 (750 ILCS 10/11 (West 2004)). Because the parties' agreement was executed after that date, the Act controls. Section 9 of the Act operated here to toll the limitations period during the parties' marriage. The basis for a reformation action is that the parties agreed to reduce to writing a mutual understanding but, in doing so, through either mutual mistake or mistake on one side coupled with fraud on the other, they omitted some material provision. Briarcliffe Lakeside Townhouse Owners Ass'n v. City of Wheaton, 170 Ill. App. 3d 244, 251 (1988). A reformation action is brought to change the written instrument by inserting the omitted provision so that the instrument conforms to the parties' original agreement. Briarcliffe, 170 Ill. App. 3d at 251. "Thus, what is sought to be reformed is not the understanding between the parties, but rather the written instrument which inaccurately reflects it." (Emphasis omitted.) Briarcliffe, 170 Ill. App. 3d at 251. Sharon's argument that Scot's reformation action is an action to change the written instrument and thus does not seek relief "under" the agreement fails because the reformation action, by definition, seeks to accurately reflect in the written instrument the parties' original agreement. In other words, the cause of action seeks relief "under" the parties' agreement. Therefore, section 9 of the Act applies to toll, during the parties' marriage, the applicable limitations period.

Having determined that section 9 of the Act tolls any statute of limitations during the parties' marriage, we answer the first certified question in the negative. The 10-year limitations period in section 13--206 of the Code was tolled during the marriage, and Scot's reformation action, which was brought more than 10 years after the premarital agreement's execution, but only one year after the dissolution proceedings commenced, is not barred by the 10-year limitations period.

### B. Summary Judgment

We turn next to the question whether the trial court erred, as a matter of law, by not entering partial summary judgment for Sharon. We answer the question in the negative because we conclude that any ruling would have been premature in light of Scot's pending counterpetition for reformation of the parties' premarital agreement.

Sharon's motion for partial summary judgment addressed count II of Scot's counterpetition for dissolution. In count II, Scot requested a declaration that the agreement is valid, enforceable, and binding, and he requested a dissolution judgment incorporating the agreement. In her motion, Sharon argued that the premarital agreement is unambiguous and, by its terms, null and void in the case of the parties' divorce. Sharon relied on paragraph 9 of the agreement, which provides: "This Agreement shall be effective only in the event the contemplated marriage between [Scot] and [Sharon] actually takes place and is existing as of the date of death of either party. If the marriage does not take place or if it is terminated for any reason other than death of [Scot] or [Sharon], regardless of fault, this Agreement shall be null and void." Sharon argued that paragraph 9 rendered the agreement null and void if the marriage terminated for any reason other than the death of either of the parties, regardless of fault. According to Sharon, because the parties, via the dissolution

proceedings, are terminating their marriage by reason other than either of their deaths, the agreement is null and void.

At the hearing on Sharon's motion, Scot argued that Sharon was not entitled to summary judgment because such a ruling would be premature in light of his pending counterpetition for reformation of the agreement. Sharon responded that she was merely asking the court to declare as a matter of law that paragraph 9 is clear and unambiguous and that any ruling on the reformation petition would involve a factual determination that would not be appropriate for a summary judgment ruling and could be made later in the proceedings. The trial court denied Sharon's motion on the basis of the pendency of Scot's reformation petition, noting that Sharon could renew her summary judgment motion after the hearing on Scot's petition.

On appeal, Sharon further contends that no other reading of the agreement is reasonable and, because there are no disputed facts, the trial court erred in denying her summary judgment. Scot notes that Sharon seeks summary judgment based solely on paragraph 9--the very same language that Scot has moved to reform. He asserts that, as the trial court has yet to hold a hearing on his petition for reformation, summary judgment is premature because it would render his petition a nullity. Scot concludes that Sharon is not entitled to partial summary judgment based upon the current language of paragraph 9, because the trial court may yet change the language of the agreement to conform to the parties' original agreement.

In his reformation petition, Scot argued that the second sentence of paragraph 9 of the agreement differs from the parties' original agreement to define their property rights incident to dissolution of their marriage and differs from the written agreement itself. He further asserted that common sense dictates that the parties would not define their rights incident to divorce earlier in the

agreement and then later, in paragraph 9, nullify those same rights. Scot argued that, due to a mutual mistake of fact, the court must change the second sentence of paragraph 9.

We cannot conclude that the trial court erred in denying Sharon partial summary judgment. It is not logical to conclude, as a matter of law, that the agreement by its terms is null and void before determining the agreement's terms. Scot seeks, via his reformation petition, to have the trial court determine whether additional language should be added to the agreement to reflect what he asserts is the parties' original agreement. It is necessary to address this issue before determining whether Sharon is entitled to judgment as a matter of law on the contract interpretation issue. As the trial court noted, Sharon may refile her motion for partial summary judgment after the hearing on Scot's reformation petition.

In sum, we answer the second certified question in the negative.

### III. CONCLUSION

For the foregoing reasons, we answer both certified questions in the negative, and we remand the cause for further proceedings.

Certified questions answered; cause remanded.

HUTCHINSON and GROMETER, JJ., concur.